**NORTH AMERICAN PHILIPS CORPORATION**

and

**Lockheed Sanders, Inc., Plaintiffs–Appellants,**

v.

**AMERICAN VENDING SALES, INC.,** Atlas Distributing, Inc., Capcom U.S.A. Inc., Coin Machine Corporation of America, Data East U.S.A., Inc., Konami (America) Inc., Leland Corporation, Romstar Inc., SNK Corporation of America, Temco, Inc., Tradewest Inc. and World Wide Distributors, Inc., **Defendants–Appellees,**

and

**Taito America Corporation, Defendant.**

**No. 94–1146.**

United States Court of Appeals, Federal Circuit.

Sept. 22, 1994.

Before MAYER, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

North American Philips Corporation and Lockheed Sanders, Inc., appeal the December 13, 1993, final judgment of the United States District Court of the Northern District of Illinois dismissing their complaint against The Leland Corporation and Tradewest Inc. pursuant to Federal Rule of Civil Procedure 12(b)(2) for want of jurisdiction. *North Am. Philips Corp. v. American Vending Sales Inc.*, 29 USPQ2d 1817, 1993 WL 473630 (N.D.Ill.1993) (Memorandum Opinion and Order). We reverse and remand for further proceedings.

## I

This case involves the alleged infringement of a patent in the arcade video game art. North American Philips and Lockheed filed a complaint on June 1, 1993 against Leland, Tradewest and eleven other defendants. On September 1, 1993, Leland and Tradewest moved to dismiss on venue and personal jurisdiction grounds.[1] They attached affidavits of the presidents of their respective corporations, Messrs. Rowe and Cook. Though admitting they had made sales "of products shipped to customers in Illinois," they characterized these sales in conclusory terms as "modest" and "negligible."

After allowing plaintiffs limited discovery on the jurisdictional question, the district court issued its ruling based on the following jurisdictional facts: Leland is incorporated in California and has its principal place of business in that state; Tradewest is incorporated in Texas and has its principal place of business in that state. Neither has an office, P.O. box, agents, employees, assets, or property in Illinois. Between 1987 and 1989, these two defendant manufacturers entered into contracts to sell video games with two distributors based in Illinois. Leland and Tradewest then had ongoing business relationships with their Illinois customers, including visits to Illinois by officers of Leland

Theodore W. Anderson, Leydig, Voit & Mayer, Ltd., of Chicago, IL, argued for plaintiffs-appellants. With him on the brief, were Steven P. Petersen and Wesley O. Mueller.

Henry S. Kaplan, Rockey, Rifkin & Ryther, of Chicago, IL, argued, for defendants-appellees.

1. The venue issue is subsumed in the personal jurisdiction issue. Venue lies ipso facto if we hold, as we do, that the district court has personal jurisdiction over Leland and Tradewest. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 16 USPQ2d 1614 (Fed.Cir.1990).

and Tradewest to promote sales of their products to those customers. Leland and Tradewest also participated in trade shows in Illinois to promote sales of their products. All the goods destined for Illinois were delivered "free on board" (f.o.b.) [2] in Texas and California. Since 1991, Leland has had no contacts with Illinois.

The district court noted that the *in personam* jurisdictional reach of a federal district court in a patent case is coextensive with the *in personam* jurisdictional reach of the courts of the state in which the district court sits and thus turned to Illinois law. It then analyzed the facts under several jurisdictional heads, common law and statutory law. Since plaintiffs concede that the defendants lack the sort of substantial and continuing contacts that amount to physical presence in the forum and thus give rise to a general jurisdiction under common law principles, we discuss only the court's ruling that it lacked specific jurisdiction under the Illinois long-arm statute.

That statute vests Illinois courts with power over defendants "as to any cause of action arising from" the "transaction of business" in Illinois, the "commission of a tortious act" in Illinois, or any other contacts sufficiently weighty to satisfy constitutional requirements. *See* 735 ILCS 5/2–209(a)(1)–(2), (c) (West 1994).

Under the tort provision, the court held that patent infringement is a wrong whose legal situs is where the injury is felt, namely the residence of the patent holder, rather than where the offending act occurs. The plaintiffs are incorporated in Delaware and have their principal places of business in New York and New Hampshire, respectively. Therefore, reasoned the court, the tortious act alleged was not committed in Illinois.

Under the transacting business provision, the court held that since the suit was not upon the contracts pursuant to which the allegedly infringing products had been sold, the cause of action arose not out of the transactions between the parties to the contracts, but instead collaterally out of the tortious occurrence of alleged infringement

against the third party plaintiffs. Even if defendants were wrong about the situs and the transactions must therefore be deemed to have occurred within the forum for purposes of a contacts analysis, jurisdiction still would not have attached under the transacting business provision. The court thus seemed to be construing the two provisions as creating two distinct categories, tort and contract, and to be concluding that this case sounds strictly in tort, which tort did not occur in Illinois.

Finally under the part of the Illinois long-arm statute that extends jurisdiction to the limits of the federal and Illinois constitutions, the district court reiterated its conclusion that since the action did not arise out of any tortious acts of infringement in Illinois or any transactions of business by plaintiffs with Leland and Tradewest in Illinois, the district court had no jurisdiction over Leland and Tradewest. Absent *in personam* jurisdiction over Leland and Tradewest, the district court also found venue wanting.

## II

■ A district court's ultimate conclusion as to whether it has jurisdiction, and any subsidiary conclusions regarding the legal effect of particular jurisdictional facts, present questions of law subject to review de novo. *See, e.g., Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir.1986).

■ In concluding that the situs of the putative "tort" of patent infringement is the domicile of the patentee, the district court relied on its reading of *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1142, 184 USPQ 387, 390–91 (7th Cir.1975). Unfortunately, the district court did not have the benefit of this court's subsequent opinion in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1570–71, 30 USPQ2d 1001, 1011–12 (Fed.Cir.1994), which disagreed that *Honeywell* stood for that proposition and instead held as a matter of uniform federal patent law that patent infringement occurs where allegedly infringing sales are

---

**2.** "Free on board" is a method of shipment whereby goods are delivered at a designated location, usually a transportation depot, where legal title and thus the risk of loss passes from seller to buyer. *See* Black's Law Dictionary 642 (6th ed. 1990); U.C.C. § 2–319(1).

made. *Id.* at 1570–71, 30 USPQ2d at 1011–12. In addition, while it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement is created and defined by statute. *See* 35 U.S.C. § 271(a) (1988). The statute does not speak generally of the "tort of patent infringement," but specifically of a liability that arises upon the making, using, or selling of an infringing article. Thus, the statute on its face clearly suggests the conception that the "tort" of patent infringement occurs where the offending act is committed and not where the injury is felt. *Id.*

■ Our conclusion that the situs of the infringement is wherever an offending act is committed, however, does not end the inquiry in this case under the tort provision of the Illinois long-arm statute. We still must determine whether the "tortious act[s]" upon which this suit is based were "commi[tted]" in Illinois. We thus address the legal question, which the district court did not reach, of what relevance the delivery of the allegedly infringing articles f.o.b. in Texas and California has on the legal situs, for purposes of the tort provision of the Illinois long-arm statute, of the allegedly tortious sales at issue here.

We emphasize at the outset that we are deciding this point upon which the appeal turns purely as a matter of federal law. Our holding is therefore limited. The tort alleged in this case exists solely by virtue of federal statute, and defining its contours inevitably entails the construction of that statute—not the Illinois long-arm statute. The latter simply creates a general, procedural rule that torts committed in Illinois give rise to jurisdiction over potential defendants. It is not the source of the substantive right and does not purport to affect its scope or nature. So, while the federal choice of law rule concerning personal jurisdiction requires us to look to state law in the first instance, the character of the particular tort alleged here requires a look back to federal law on the conceptualization of the tort and its situs.

The difficulty in answering this question is that unlike the "making" and the "using" of an infringing article, which as purely physical occurrences are relatively straightforward to place, the "selling" of an infringing article has both a physical and a conceptual dimension to it. That is to say, it is possible to define the situs of the tort of infringement-by-sale either in real terms as including the location of the seller and the buyer and perhaps the points along the shipment route in between, or in formal terms as the single point at which some legally operative act took place, such as the place where the sales transaction would be deemed to have occurred as a matter of commercial law. Appellees suggest that this point is where the goods change hands, which in this case of course fell outside Illinois.

■ We hold that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there). To hold otherwise would exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478–79, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985) ("The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, or on 'conceptualistic . . . theories. . . .' Instead, we have emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations *with future consequences [that] are the real object of the . . . transaction.*' ") (emphasis added; citations omitted); *see, e.g., Wilden Pump & Eng'g Co. v. Versa–Matic Tool Inc.,* 20 USPQ2d 1788, 1790–91, 1991 WL 280844 (C.D.Cal.1991) (sales of allegedly infringing articles to distributors in the forum could not be said to fall entirely without the forum for purposes of a jurisdictional analysis simply because they were delivered f.o.b. outside the forum).

Furthermore, even if we were to conclude that a " 'mechanical' test" might be appropriate here for some reason, appellee has failed to explain why the criterion should be the place where legal title passes rather than the more familiar places of contracting and performance. *See Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1945)). Appellees have pointed to no policy that would be furthered by according controlling signifi-

**1580**

cance to the passage of legal title here. This case has nothing to do, for example, with the proper allocation of the risk of loss between parties to the underlying sales contracts.

## III

■ Having disposed of this appeal under the tort provision on a narrow ground of federal law, we need not, and therefore will not, venture an opinion on whether the Illinois legislature intended the tort and "transacting business" provisions to be mutually exclusive, or even if they overlap to some extent, whether the effect of f.o.b. delivery on the legal situs of a sale might be different under the latter provision. We are still obliged to determine, however, whether exercising power under the tort provision of the Illinois long-arm statute violates the defendants' constitutional right to due process of law guaranteed by the Fifth and Fourteenth Amendments. Since the catch-all long-arm jurisdictional provision, by its terms, constitutes a plenary grant of power to the limits of constitutionality, we note that we are simultaneously passing on the application of this provision of the Illinois long-arm statute. In other words, to approve the dismissal of plaintiff's complaint, we must conclude that it would be unconstitutional for an Illinois court to subject these defendants to *in personam* jurisdiction under *International Shoe* and its progeny.

As a threshold matter, we note that Illinois clearly has an interest in prohibiting the importation of infringing articles into its territory and regulating the conduct of the distributors with respect to the subsequent resales, *see Beverly Hills Fan*, 21 F.3d at 1568, 30 USPQ2d at 1009 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984)). To suppose that a state must have a pecuniary interest in a matter, perhaps absent here because neither plaintiffs nor defendants are domiciliaries of Illinois, is to mistake a necessary for a sufficient condition for the assertion of personal jurisdiction. We doubt that the residual power of the several states, guaranteed by the Tenth Amendment, is so impoverished that it could not reach parties who dispatched allegedly infringing goods into their respective territories so long as the limitation imposed by the Due Process Clause is not transgressed. To that limitation we now turn.

In *International Shoe*, the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316, 66 S.Ct. at 158. Subsequent cases have emphasized the importance of the quality as opposed to the quantity of contacts, examining whether the contracts resulted from the "purposeful" activity of the defendant, *see, e.g., Keeton v. Hustler Magazine*, 465 U.S. at 774, 104 S.Ct. at 1478, as opposed to, for example, the unilateral activity of a third-party over which defendant had little or no control, *see, e.g., Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984).

In this case, Leland and Tradewest voluntarily placed a substantial quantity of infringing articles into the stream of commerce conscious that they were destined for Illinois. Regardless where the transactions are deemed to be situated under the tort or the "transacting business" provisions, these defendants were nonetheless parties to the importation into the forum state. Surely the reasonable market participant in the modern commercial world has to expect to be haled into the courts of that state, however distant, to answer for any liability based at least in part on that importation. *See Beverly Hills Fan*, 21 F.3d at 1566, 30 USPQ2d at 1008 (finding personal jurisdiction on substantially similar facts); *see also Novacolor, Inc. v. American Film Technologies, Inc.*, No. 91 C 6213, 1992 WL 170564, at 4–5 (N.D.Ill. July 16, 1992) (unpublished) (same). Furthermore, since the importers were distributors, Leland and Tradewest also knew or reasonably could foresee that the articles would be resold in Illinois, whereupon a distinct liability for contributory infringement would arise in them. This makes the possibility of being summoned for judgment in Illinois all the more foreseeable.

In addition to directing the goods toward Illinois, these defendants also "purposefully avail[ed]" themselves of the protections and privileges of Illinois law insofar as the demand that gave rise to the transactions existed in part thanks to the legal and economic infrastructure supporting and protecting the buyer corporations. *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). This further strengthens our conclusion that the United States District Court for the Northern District of Illinois has jurisdictional power over these defendants in this action.

For these reasons, the judgment of the district court is reversed and the case remanded for further proceedings.

*REVERSED AND REMANDED.*