**SYSTEMATION, INC., Plaintiff,**

v.

**ENGEL INDUSTRIES, INC., Defendant.**

**No. Civ.A 97–10375–RCL.**

United States District Court,
D. Massachusetts.

Jan. 27, 1997.

### MEMORANDUM AND ORDER ON DEFENDANTS MOTION TO DISMISS (# 18)

COLLINGS, United States Magistrate Judge.

On February 19, 1997 plaintiff, Systemation, Inc., (hereinafter "Systemation") filed a three-count complaint (# 1) alleging patent infringement, trademark infringement and unfair competition against defendant, Engel Industries, Inc. (hereinafter "Engel"). The patents in issue are entitled "Automated Method For Placement of Angle Plates in Transverse Duct Flanges" and "Apparatus For Placement of Angle Plates In Transverse Duct Flanges". Systemation has registered the apparatus under the trademark "COR-NERMATIC". In lieu of filing an answer the defendant filed a motion to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer the case to the Eastern District of Missouri. (# 18) The assertion of lack of personal jurisdiction requires an examination of two issues, i.e., (1) whether the prerequisites of the Massachusetts long-arm statute are satisfied and (2) whether the assertion of jurisdiction comports with the requirements of the Due Process Clause of the Fifth Amendment.[1]

█ The Massachusetts long-arm statute specifically authorizes this Court to exercise jurisdiction over a person,

> who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
>
> (b) contracting to supply services or things in this commonwealth;
>
> (c) causing tortious injury by an act or omission in this commonwealth;
>
> (d) causing tortious injury, in this commonwealth by an act or omission outside the commonwealth if he regularly does or solicits business, or engages in

Alfred W. Breiner, Theodore A. Breiner, Alexandria, VA, Cornelius J. Moynihan, Jr., Peabody & Brown, Boston, MA, for Plaintiff.

John H. Henn, Marc K. Temin, Foley, Hoag & Eliot, Boston, MA, John F. Cowling, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO, for Defendant.

---

1. *See* discussion in *Hologic Inc. v. Lunar Corp.,* 36 U.S.P.Q.2d 1182, 1183–4 (D.Mass., 1995).

any other persistent course of conduct
. . .

Mass.Gen.L. ch. 223A, § 3.

I find that personal jurisdiction exists under both subsections (a) and (c). With respect to subsection (a), while Engel has no offices in Massachusetts, it is undisputed that Engel has since 1981 had an exclusive dealership agreement with a Massachusetts corporation (hereinafter "the distributor") to sell Engel's goods in the six New England states. Thus, Engel transacts business in Massachusetts directly with its distributor.

All of Engel's products which are to be acquired by any end users in New England are sold first to the distributor who, in turn, sells them to the end users. The amount of sales is not insubstantial. The distributor keeps $40,000 worth of Engel's products in stock. In 1996, the distributor sold $485,340 worth of Engel products; the amount in 1995 was $181,185; the amount in 1994 was $476,935; the amount in 1993 was $103,654; the amount in 1992 was $219,783, and the amount in 1991 was $318.530. As a percentage of Engel's total sales, the amount sold to the Massachusetts distributor was 1991 —4.9%; 1992—3.54%; 1993—2.69%; 1994—6.86%; 1995—2.26% and 1996—5.33% [2]

On these facts, Engel is "transacting business" in Massachusetts within the meaning of subsection (a).

In addition, the cause of action alleged, i.e., patent infringement, "arises from" this transaction of business. The sale of the machine to the Massachusetts distributor constitutes an alleged act of infringement. It does not matter that the machine was ordered by the distributor on behalf of a Massachusetts corporation to use in its manufacturing plant in New Hampshire. The sale to the Massachusetts distributor is sufficient to establish the prerequisites of the cause of action if it is found that Engel's machine infringes Systemation's patent.

As to subsection (c), it is noteworthy that it has been held that for purposes of the Massachusetts long-arm statute, an allegation of patent infringement may be considered a tortious injury. *Hologic Inc. v. Lunar Corp.*, 36 U.S.P.Q.2d at 1186. This follows the law of the Federal Circuit enunciated in the case of *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed.Cir.1994). In that case, the Court was dealing with the Illinois long-arm statute which granted jurisdiction "as to any cause arising from" the "commission of a tortious act in Illinois." *North American Philips Corp.*, 35 F.3d at 1578. The Court held ". . . that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there)." *North American Philips Corp.*, 35 F.3d at 1579. Thus, in the instant case, Engel's sale to its Massachusetts distributor was an "act" occurring in Massachusetts. Under the Federal Circuit's decision in the earlier case of *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir.1994), the act caused tortious injury in Massachusetts. In that case, the Court was deciding, *inter alia*, whether personal jurisdiction existed under section A.4 of Virginia's long-arm statute which provided for jurisdiction if, *inter alia*, the defendant "caused tortious injury" in Virginia. *Id.* at 1569. A Chinese manufacturer had a distributor in New Jersey who sold the Chinese manufacturer's products to a chain of retail stores in Virginia, which in turn sold the products to retail customers. The Federal Circuit held that both the manufacturer and distributor caused tortious injury in Virginia because:

> Economic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there. The loss is immediate when the patent holder is marketing a competing product.

*Beverly Hills Fan Co.*, 21 F.3d at 1571.

Since the retail outlet made sales of the infringing product in Virginia, the Court held that both the Chinese manufacturer and the New Jersey distributor had caused tortious injury in Virginia because they had "purposefully shipped the [infringing product] into

2. These figures come from Exhibit 24 to the Deposition of Michael Zimmer, Engel's Vice-President in charge of finance.

---

Virginia through an established distribution channel." *Beverly Hills Fan Co.*, 21 F.3d at 1571.

For all of these reasons, I rule that Systemation has established that Engel is subject to jurisdiction under either subsection (a) or (c) or both of the Massachusetts long-arm statute.

The next issue is whether the assertion of jurisdiction in Massachusetts offends the Due Process Clause of the Fifth Amendment.

■ There are two types of in personam jurisdiction, general and specific. General jurisdiction is broad in scope and exists where constitutional due process concerns are satisfied by the defendant's continuous and systematic forum state activity. *See generally Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 143–44 (1 Cir. 1995). If the defendant's forum related contacts are not voluminous enough to confer general jurisdiction, the plaintiff may still proceed if it satisfies the narrow standard of specific jurisdiction. *Id.* In the instant case, as I have ruled, *supra*, the plaintiff has established specific jurisdiction under the Massachusetts long-arm statute. Accordingly, the issue is whether the plaintiff has established that there is specific jurisdiction within the Constitutional framework.

■ The First Circuit has crafted an analytical model to aid in determining whether subjecting a defendant to personal jurisdiction comports with constitutional due process requirements. The model takes the form of a tripartite test. Jurisdiction is proper only where: (1) the claim directly arises out of or relates to the defendant's forum related activities ("relatedness"), (2) the defendant has purposefully availed itself of the privilege of conducting business in the forum state such that the defendant can reasonably foresee being haled into court there ("purposeful availment/minimum contacts)", and (3) the exercise of jurisdiction is reasonable. *Pritzker v. Yari*, 42 F.3d 53, 60–61 (1 Cir.1994) citing *United Electrical, Radio and Machine Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1 Cir.1992) (other citations omitted). Each element will be addressed in turn.

■ The constitutional analysis of "arising out of or relating to" has been distinguished, at great length, from the "arising from" analysis of the Massachusetts long-arm statute. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 713–717 (1 Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997); *Christopher v. Mount Snow, Ltd.*, 1996 WL 590738 (D.Mass.1996). Unlike the long-arm statute, the relatedness requirement of the constitutional inquiry incorporates a more stringent proximate cause component that requires a showing of foreseeability. *Nowak*, 94 F.3d at 715. The relatedness requirement, however, remains flexible. *See Christopher*, 1996 WL 590738 at *6 (quoting, in part, *Nowak*, 94 F.3d at 715) (outlining exception to proximate cause analysis in a preexisting contractual or business association scenario); *see also Nowak*, 94 F.3d at 714–15 (illustrating that strict adherence is "unnecessarily restrictive" and characterizing the relatedness requirement as a small overlay of "but for" on "proximate cause" that requires a "meaningful link" between [the defendant's] contact and the harm suffered); *Pritzker*, 42 F.3d at 61 ("the relatedness test is, relatively speaking, a flexible, relaxed standard."); *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1 Cir.1994) (commenting that the disjunctive nature of "arising out of, or relating to" "portends added flexibility and signals a relaxation of the applicable standard"). The requirement may be met where the plaintiff's cause of action directly arises out of the specific contacts between the defendant and the forum state. *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1 Cir.1995).

■ Systemation's claim directly arises from the sale of the alleged infringing product to its distributor. Unlike the facts that frame the specific jurisdiction discussion in many of the cases cited by the parties, the cause of action here is a direct result of a singular event. It cannot successfully be characterized as attenuated or indirect. Given the direct nature of the claim, it is clear that the cause of action arises out of or relates to the defendant's forum related activity.

Foreseeability and voluntary action are the cornerstones of the second prong of the constitutional test. *Ticketmaster–New York*, 26 F.3d at 207. These cornerstones flank a broad foundation for the analysis. *Pritzker*, 42 F.3d at 62 ("The jurisprudence of minimum contacts casts a wide net ..."). Accordingly, only one contact is necessary to confer jurisdiction, so long as the contact is meaningful. *Id.* at 61. Distinguishing meaningful from meaningless is accomplished by examining the subject matter of the contact and its specific nature. *Id.* at 62. That is not to say, however, that the inquiry as to this prong of the constitutional test is limited to the contact to which the claim is ascribed. Unlike the analysis of "transacting any business" in subsection (a) of the long-arm statute, other Massachusetts contacts are relevant in determining whether the defendant purposefully sought to participate in the economic life of the commonwealth and avail itself of the benefits and protections of the commonwealth such that it could reasonably foresee being haled into court here. *Connecticut Nat'l Bank v. Hoover Treated Wood Products, Inc.*, 37 Mass.App.Ct. 231, 236, n. 8, 638 N.E.2d 942, 946, n. 8 (1994) (citing *Good Hope Industries, Inc. v. Ryder Scott Co.*, 378 Mass. 1, 10, n. 17, 389 N.E.2d 76, 82, n. 17 (1979)) (conferring specific jurisdiction under Mass.Gen.L. ch. 223A, § 3(a) and satisfying due process concerns based in part upon dimension and duration of contact with resident business).

As indicated, *supra*, Engel has, through its distributor, established a distribution network in Massachusetts which accounts for hundreds of thousands of dollars in sales every year. As the Supreme Court has written:

The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–8, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citation omitted).

By entering into an exclusive agreement with its distributor, Engel established a regular distribution channel through which the distributor, as Engel's agent, purposefully sought to sell Engel's products. All the products which Engel sold in Massachusetts were first sold to its Massachusetts distributor who, in turn, sold them to customers in the region. This "distribution channel" set up by Engel created a stream of commerce whereby Engel's reasonable expectation was that they would be purchased by its distributor in Massachusetts and then sold by the distributor to Massachusetts consumers. On these facts, it can readily be said that Engel "purposefully availed" itself of the privilege of conducting business in Massachusetts, and it was entirely foreseeable that Engel would be brought into court in Massachusetts. *Viam Corporation v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 428–9 (Fed.Cir. 1996).

■ The principal question to be addressed in determining the reasonableness of conferring personal jurisdiction is "whether the exercise of jurisdiction over [the defendant] in the circumstances of this case would, holistically viewed, offend traditional notions of 'fair play and substantial justice?' " *Pritzker*, 42 F.3d at 63 (citation omitted). In *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court identified five factors, referred to in subsequent cases as the "gestalt factors", that provide the substance of the "fair play and substantial justice" catch phrase. The factors are:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Pritzker*, 42 F.3d at 63–4 quoting *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corporation*, 960 F.2d 1080, 1088 (1 Cir.1992).

"In very close cases the gestalt factors may tip the constitutional balance." *Ticketmas-*

*ter–New York*, 26 F.3d at 209 (citation omitted). The First Circuit has characterized the reasonableness prong of the due process inquiry as a sliding scale: "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true . . .". *Id.* at 210. Accordingly, the gestalt factors have been referred to as the "fail-safe device" of the analytical machinery. *Id.* at 212. Given the strength of Systemation's prima facie showing in the instant case there is no need to trigger the fail-safe device. An examination of factors one and three tips the scale in favor of Systemation, whereas factors two, four and five are neutral at best.

The first factor requires that a defendant demonstrate some kind of special or unusual burden. *Pritzker*, 42 F.3d at 64. Distance, is not, by itself, a sufficient burden. *Nowak v. Tak How Investments, Ltd.*, 899 F.Supp. 25 (D.Mass.1995), *affd.*, 94 F.3d 708 (1 Cir. 1996) (asserting that requiring a defendant to travel from Hong Kong to Boston to defend a lawsuit is "but an ancillary cost of doing business within this district"). The defendant resides in St. Louis, Missouri, a substantial distance from Boston. However, given Engel's size, the distance is not so burdensome that it tips the balance towards the defendant.[3]

With respect to the third factor, the plaintiff's choice of forum is to be given a degree of deference. *Ticketmaster–New York*, 26 F.3d at 211 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419). Here reasonableness tips sharply in Systemation's favor. Mr. Goodhue is 85 years old and in failing health. (Plaintiff's Opposition to Defendant's Motion to Dismiss, # 22, Ex. B, ¶¶ 3–4) As the inventor of the CORNERMASTER and President of Systemation it stands to reason that Mr. Goodhue would want to attend trial. There is no argument that personal jurisdiction exists in Rhode Island where Mr. Goodhue lives;

Massachusetts is the nearest forum to his place of residence. Moreover, the witnesses that the plaintiff intends to call all reside in Massachusetts. (*Id.* at p. 18).

In sum, having satisfied the two parts of Mass.Gen.L. ch. 223A § 3(a) and the tripartite constitutional test, Systemation has made a prima facie showing that this Court has personal jurisdiction over defendant Engel.

## VENUE AND TRANSFER UNDER 28 U.S.C. § 1404(a)

■ It is axiomatic, moreover, defendant concedes, that if the Court's exercise of personal jurisdiction is proper, venue is also proper. 28 U.S.C. § 1391(c); *North American Philips Corp.*, 35 F.3d at 1577 n. 1 (venue is subsumed in question of personal jurisdiction).

With respect to transfer, 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The defendants have the burden "to establish that, on balance, the interests of justice and convenience weigh heavily in favor of transfer." *Abeloff v. Barth*, 119 F.R.D. 315, 330 (D.Mass., 1988) quoting *Securities and Exchange Commission v. National Student Marketing Corp.*, 360 F.Supp. 284, 295 (D.D.C.1973). Unless the defendant carries its burden, the plaintiff's choice of forum is given considerable deference. *Id.*, citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). A defendant's general allegations as to the location of books and records and the inconvenience to witnesses is not sufficient; more precise allegations are required. *See Abeloff*, 119 F.R.D. at 331; *see also, American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 264 (W.D.Mo.1980) (requiring that defendant's moving papers must show the location, difficulty in transportation and importance of books and records); *Riso Kagaku Corp. v.*

---

**3.** At oral argument, counsel for Engel conceded that jurisdiction would be proper in New Hampshire where the company to whom the distributor sold the machine has its manufacturing facility and where the machine is located. If the burden of appearing in New Hampshire is not sufficient to defeat jurisdiction, it can hardly be argued that the burden of appearing in Massachusetts would be.

*A.B. Dick Co.,* 300 F.Supp. 1007, 1010 (S.D.N.Y.1969) (explaining that a movant must provide precise information, in affidavit form, about the witnesses he intends to call and the anticipated areas of their testimony).

Engel includes in its motion a request for dismissal according to the older doctrine of forum non convenient. The Court's discretion under forum non conveniens is narrower than that granted by section 1404(a), however, the criteria examined are the same. *Abeloff,* 119 F.R.D. at 330, citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). Accordingly, if Engel fails to satisfy the requirements of a 1404(a) transfer, it necessarily fails in its motion to dismiss.

Defendant's papers are deficient in that they make no persuasive showing that the present forum is sufficiently inconvenient. In fact, Defendant's Memorandum in Support of Its Motion to Dismiss (# 19) and Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss (# 29) do not illustrate, beyond conclusory statements, why transfer is appropriate. Engel's moving papers did not show the location, unavailability, or importance of physical evidence. Moreover, the defendant did not file affidavits providing precise information about the witnesses it intends to call and the anticipated areas of their testimony.

### ORDER

For the reasons stated, it is hereby ORDERED that Defendant's Motion to Dismiss (# 18) be, and the same hereby is, DENIED.