IP INNOVATION, L.L.C. and Technology Licensing Corporation, Plaintiffs,

v.

REALNETWORKS, INC., and Snell & Wilcox, Ltd., Defendants.

No. C03–2428P.

United States District Court, W.D. Washington, at Washington.

March 12, 2004.

Mark H Bloomberg, James M Glass, Jesse J Jenner, Brien P Santarlas, Fish & Neave (N.Y.), New York, NY, Sidney R Snyder, Jr., Merrick Hofstedt & Lindsey, Seattle, WA, for RealNetworks Inc, Snell & Wilcox Ltd, Defendants.

Arthur Anthony Gasey, Paul Christopher Gibbons, Raymond P. Niro, Paul K. Vickrey, Niro Scavone Haller & Niro, Chicago, IL, Robert F Lopez, Betts Patterson & Mines, Seattle, WA, for IP Innovation LLC, Technology Licensing Corporation, Plaintiffs.

ORDER DENYING SNELL & WILCOX'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

PECHMAN, District Judge.

This matter comes before the Court on defendant Snell & Wilcox, Ltd.'s ("S & W") Motion to dismiss for lack of personal jurisdiction. Plaintiffs brought this suit for patent infringement against S & W, the manufacturer of the allegedly infringing devices, and RealNetworks ("Real"), a company that is using the devices. Plaintiffs contend that this Court has personal jurisdiction over S & W based on its sale

of the allegedly infringing devices to the forum state by a wholly owned subsidiary. Defendant S & W brought this Motion on the grounds that its subsidiary's contacts with the forum state are not sufficient to support this Court's exercise of jurisdiction. Having reviewed the papers and pleadings submitted by the parties, the Court hereby DENIES the motion to dismiss.

## BACKGROUND

The two plaintiff companies IP Innovation and Technology Licensing Corporation ("plaintiffs") own and have standing to sue for infringement of four United States patents. This action alleges infringement of those patents by IQ Modular Products, devices manufactured and sold by defendant S & W and used by co-defendant Real. This court has subject matter jurisdiction under 28 U.S.C. § 1338(a) (patent infringement). Personal jurisdiction over Real is not disputed. At issue in this motion is whether this court has specific personal jurisdiction over S & W.

Defendant S & W is a corporation registered in England and Wales, with its principal place of business and manufacturing facilities in the United Kingdom. S & W has no offices, employees, bank accounts, or sales agents in Washington, and does not own or lease property in the state. S & W sells its products in Washington and throughout the United States through a wholly owned subsidiary of S & W, Snell & Wilcox, Inc. ("INC"), a company incorporated and headquartered in California. INC is the only entity in the United States from which S & W receives orders or payment for its products that are purchased, delivered, and used in the United States. However, S & W rarely, if ever, ships its products to INC in California. Instead, when a purchaser in the United States orders an S & W product, INC simultaneously sends an invoice for payment to the purchaser and orders the product from S & W, listing the purchaser's address for delivery. S & W ships its products directly to the purchasers, and INC acts as a middleman.

At issue in this case are components manufactured by S & W that are used in Washington by co-defendant Real. There is no documentation that S & W or its subsidiary specifically targeted advertising or tailored its products for a market in Washington. Real purchased the components as part of a system that was designed and installed by Digital Systems Technology ("Digital"), an independent third party. Digital is headquartered in Atlanta, Georgia, and operates an office in Seattle which purchased the S & W components and installed them for Real. S & W suggests that Digital purchased the devices from INC, and that Digital was responsible for bringing the devices into the state of Washington without any direct action by S & W. Since INC's involvement in sales is as a middleman, Digital presumably ordered the components through INC, and S & W processed that order and shipped the components directly to Digital in Washington. Though there is no direct evidence that the IQ Modulators were shipped from the United Kingdom directly to Washington, those facts are alleged and there is no evidence to the contrary.

## ANALYSIS

Federal Circuit law, rather than Ninth Circuit law, governs the determination of personal jurisdiction in patent infringement actions. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377–78 (Fed.Cir.1998); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir.1994); *Viam Corporation v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 428 (Fed.Cir.1996) (The Federal Circuit

courtesy rule under which procedural matters are guided by the law of the regional circuit does not apply where the issue, even if procedural in nature, is "intimately involved in the substance of enforcement of [a] patent right."). It is the plaintiff's burden to establish a *prima facie* case of personal jurisdiction by alleging facts that, if true, would support jurisdiction, and upon that showing, the burden is on the defendant to prove the exercise of jurisdiction is unreasonable. *Electronics For Imaging, Inc., v. Coyle,* 340 F.3d 1344, 1350 (Fed.Cir.2003).

The starting point in analysis of a federal court's personal jurisdiction is the forum state's long-arm statute. *Deprenyl Animal Health, Inc. v. The University of Toronto Innovations Foundation,* 297 F.3d 1343, 1349 (Fed.Cir.2002). Where the forum's long-arm statute is coextensive with due process, as is Washington's, the focal inquiry becomes whether an exercise of jurisdiction comports with Constitutional due process. *Genetic Implant Systems, Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1458 (Fed.Cir.1997); *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1405 (9th Cir.1994); R.C.W. § 4.28.185.

■ Where personal jurisdiction cannot be founded on one of the traditional bases for jurisdiction such as service, domicile, or consent to be sued in the forum state, due process requires that the defendant have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Notably, even a single act connecting the defendant to the forum state may suffice to establish requisite minimum contacts. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The Federal Circuit's

minimum contacts test considers three factors to determine whether jurisdiction over an out-of-state defendant comports with due process: whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair. *Electronics for Imaging,* 340 F.3d at 1350. Application of these three factors to the facts of this case establishes that this Court's jurisdiction over S & W is proper.

*(1) Activities Purposefully Directed to the Forum*

This Court's jurisdiction over S & W is based on the minimum contacts of its subsidiary INC with the forum state. The parent company located in the United Kingdom is subject to jurisdiction in Washington by attributing the California subsidiary's minimum contacts with the forum to the parent within the parent-subsidiary relationship. Since jurisdiction is a function of the buyer's location within the forum, not the buyer's identity, the fact that the original Washington customer was a third party that later sold S & W's components to Real does not affect the jurisdictional analysis.

■ A subsidiary company's contacts with the forum state may be imputed to the parent company where the subsidiary was established for, or is engaged in, activities that the parent would have to undertake if not for the subsidiary's involvement. *Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.,* 142 F.3d 1266, 1271 (Fed.Cir.1998). *Dainippon* involved a suit by an international company seeking a declaratory judgement that its products did not infringe a patent held by CFMT, a wholly owned subsidiary of CFM, the company that sold the patented products in

the United States. CFMT, the subsidiary being sued, argued that it was not subject to personal jurisdiction in California because it had no employees, offices, or agents in that state and had never sold products in that state. The court held that "the parent subsidiary relationship between CFM and CFMT [led] to the conclusion that the imposition of personal jurisdiction [was] 'reasonable and fair,' one of the due process factors." *Id.* at 1271. Further, the court chided CFM's position that by establishing CFMT as a holding company for its intellectual property it could take actions without becoming defendant to a declaratory judgement action. *Id.*

Though Federal Circuit case law on this issue is minimal, the Ninth Circuit has reached similar conclusions that jurisdiction over an international company can be established through minimum contacts in the forum by a subsidiary that was "either established for, or is engaged in activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1405 n. 9 (9th Cir.1994); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 422–23 (9th Cir.1977).

"Minimum contacts" describes the requisite relationship between the defendant and the forum state necessary to support the exercise of personal jurisdiction. While the second part of the test, whether the case arises under those particular contacts, considers the individual plaintiff's link to the defendant, the minimum contacts inquiry focuses on the defendant's connection to the forum, rather than to the purchaser. The Federal Circuit has rejected the notion that a sale takes place solely where the goods change hands, instead finding that a sale occurs in the forum state because the buyer is in that state. *North American Philips Corpora-*

*tion v. American Vending Sales, Inc.,* 35 F.3d 1576, 1578–79 (Fed.Cir.1994). Thus, the physical link to the forum created by the sale of an allegedly infringing product to a buyer in the forum state supports jurisdiction in that state. *Id.* at 1579 (statutory language describing liability for "making, using, or selling" infringing articles suggests that patent infringement occurs where the sales are made).

Here, S & W's sale of IQ Modular devices to Digital's Seattle office for use in Real's Seattle system, establishes minimum contacts between S & W and the State of Washington to support this Court's exercise of jurisdiction. This single sale is sufficient to establish the minimum contacts that permit an exercise of specific jurisdiction in a case arising out of that sale.

■ S & W's argument that INC is responsible for the sale does not free it from connection to the forum because the subsidiary's actions may be imputed to the parent company. INC evidently "was established for the purpose of performing, and engages in" activities that S & W would have to undertake if not for INC's involvement. In fact, S & W does not dispute that INC's actions may be attributed to S & W. Rather, S & W contests the assignment of liability solely on the fact that INC's sale to Digital "took place in California." (Dkt. No. 32 at 5). The argument that the sale in fact took place in California is unavailing, because the purchasers and shipping destination were known at the time of sale, demonstrating S & W's deliberate direction of their products to Washington. Notably, S & W's act in violation of the federal patent infringement statute was the sale itself, not Real's use or activation of the devices. Presumably, under the statute, if the devices infringe the patent, S & W would be liable simply for the sale to Digital, even if the

devices had remained in storage and were never actually used in Washington. S & W sold directly to a company in Washington, regardless of the fact that the purchaser was not the end user. S & W satisfied "purposeful direction" by its sale of IQ Modular devices directly to Digital in Washington with the awareness that the devices were a component part in a system intended for use in this State.

The Federal Circuit emphasizes that in questions of personal jurisdiction, courts must take a "highly realistic" approach to each case rather than "exalting form over substance in an area where the Supreme Court generally has cautioned against such an approach." *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed.Cir.1994) (citing *Burger King*, 471 U.S. at 478–79, 105 S.Ct. 2174). To exempt S & W from personal jurisdiction because its sales to the forum were made indirectly through a subsidiary established to do tasks that S & W would otherwise have done itself would exalt form over substance despite the Supreme Court's warning against such an approach.

*(2) A Claim "Arising Out of" or "Relating to" S & W's Activities in the Forum*

■ Having concluded that S & W purposefully directed activities regarding the sale and use of IQ Modular devices at Washington State, this Court must next consider whether plaintiffs' action for infringement of patents "arises out of or relates to" those activities. *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1351. This claim arises out of or relates to S & W's activity of selling the accused infringing devices to Washington customers because it is based on a violation of the patent statute 35 U.S.C. § 271(a), which prohibits sales and offers to sell infringing products.

*(3) A Reasonable and Fair Exercise of Jurisdiction*

■ The final step in determining a court's jurisdictional reach in accordance with due process is to evaluate whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154; *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Factors to consider in the determination of reasonableness include "the burden on the defendant, the forum state's interests, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026; *Deprenyl*, 297 F.3d at 1354.

Here, S & W makes only a general argument for unreasonableness, without support for such a finding. Analysis of the factors does not indicate that an exercise of jurisdiction in this case would be unreasonable. Judge Castillo's dismissal of the suit and recommendation that it be filed in this district weighs heavily for the plaintiffs' interest, the judicial system's goal of efficient resolution, and the shared interest of the states in policymaking through cases jointly tried wherever possible. Since S & W can undoubtably be subjected to suit in California, it is evident that the burden on S & W to litigate under United States law, and in a location on the West Coast is not excessive. Finally, since co-defendant Real is located in Washington, the State has a strong interest in seeing the case litigated here. Without any argument or facts asserting otherwise, there is no basis for finding an exercise of jurisdiction over S & W to be constitutionally unreasonable.

*CONCLUSION*

The Court concludes that defendant S & W has the requisite minimum contacts with the state of Washington to subject it to personal jurisdiction of a court in that forum without violating due process. The Court therefore DENIES S & W's motion to dismiss.

The Clerk is directed to send copies of this order to all attorneys of record.