Sixth Division
May 28, 2010

No. 1-09-2549

| | | |
|---|---|---|
| MORGAN, LEWIS AND BOCKIUS LLP | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 08 L 004013 |
| | ) | |
| THE CITY OF EAST CHICAGO, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Ronald F. Bartkowicz, |
| | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the opinion of the court:

Defendant City of East Chicago (the City) brings this appeal under Supreme Court Rule 306(a)(3) from an order of the circuit court of Cook County denying its motion to dismiss plaintiff Morgan, Lewis & Bockius LLP's complaint for lack of personal jurisdiction. 166 Ill. 2d R. 306(a)(3). Plaintiff filed a complaint against the City in the circuit court of Cook County seeking relief for unpaid legal fees related to plaintiff's representation of the City in several lawsuits pending in Indiana state and federal courts. On appeal, the City argues that the trial court erred in denying its motion because the City is a nonresident municipal corporation with virtually no contacts with the State of Illinois.

In April 2008, plaintiff filed its initial complaint against the City. The City responded by filing a motion to dismiss for lack of personal jurisdiction in October 2008. In December 2008, plaintiff filed its amended complaint against the City for its "refusal to pay the agreed legal fees charged and disbursements advanced" by plaintiff in connection with plaintiff's representation of the City "in approximately 40 matters including cases alleging civil rights violations, breaches of

contract, and various other matters." The complaint stated that the City is "a municipality and city of the second class under Indiana law (I.C. §36-4-5-2 *et seq.*)" and that it may be sued in Illinois "for its failure to abide by contracts and other misconduct." The following facts were alleged in plaintiff's amended complaint.

In 2005, the City retained plaintiff to represent it and numerous individuals with respect to various matters brought against the City in federal and state courts, or in connection with legal advice sought by the City. The City's retention of plaintiff was pursuant to an overall agreement that included the hourly rates for services plus disbursements incurred in connection with any particular matter. This agreement was "reflected in each of the individual retention agreements the parties executed for each matter." Plaintiff provided services to the City from April 2005 to December 2007, but the City's payments became sporadic beginning in the spring and summer of 2006. The complaint alleged that plaintiff is owed approximately $3.2 million in unpaid legal fees and disbursements from the City. Count I alleged a breach of contract and the duty to perform in good faith because the City "repeatedly disregarded and breached its obligations by failing to pay [plaintiff] the sums due" and engaged in "duplicitous dealings" with plaintiff which breached an implied covenant of good faith. In count II, plaintiff pled a breach of an oral promise to pay based on assurances made by the City's corporation counsel. Count III sought an action for account stated based on the City's receipt of sums due, assurances that sums were proper, and the failure to timely object to billing rates, staffing or services provided, or amount at issue. Count IV alleged a claim of *quantum meruit* based on plaintiff's assertions that it billed the City at the disclosed rates, provided invoices and summaries of work performed to the City,

and the City failed to protest plaintiff's work or direct it to "cease to perform services or alter its billing rates or practices or modify its staffing of the cases."

In January 2009, the City filed a motion to dismiss plaintiff's amended complaint for lack of personal jurisdiction. In its motion, the City stated that it "lacks the necessary contacts with Illinois for personal jurisdiction" because it "did not purposefully avail itself of the privilege of conducting business in Illinois, nor could it reasonably foresee being haled into an Illinois court because the agreement called for the Plaintiff to represent [the City] in Indiana concerning Indiana legal matters as Indiana attorneys." The City further contended that the exercise of personal jurisdiction would violate due process under both the United States and Illinois Constitutions and that its actions did not satisfy any provision of the Illinois long-arm statute (735 ILCS 5/2-209 (West 2008)). The City included a memorandum in support of its motion and an affidavit of Carmen Fernandez, the City's corporation counsel.

In response to the City's motion to dismiss, plaintiff asserted that personal jurisdiction existed under three different subsections of the Illinois long-arm statute: (1) the City entered into or performed a contract "substantially connected" with Illinois pursuant to section 2-209(a)(7) of the Code of Civil Procedure (735 ILCS 5/2-209(a)(7) (West 2008)); (2) the City was "doing business" in Illinois based on multiple invoices and purchase orders executed between the City and various Illinois vendors pursuant to section 2-209(b)(4) (735 ILCS 5/2-209(b)(4) (West 2008)); and (3) the City has sufficient contacts with Illinois to satisfy due process under the United States and Illinois Constitutions pursuant to section 2-209(c) (735 ILCS 5/2-209(c) (West 2008)). Plaintiff included the affidavits of Charles Jackson, a partner in plaintiff's Chicago

office, and Steffany Hreno, an attorney representing plaintiff in the instant case. Numerous exhibits to the affidavits were filed with the trial court. The City filed numerous affidavits as exhibits with its reply to its motion to dismiss.

According to the parties' filings in regard to the City's motion, the following facts were established. In April 2005, the City decided to seek counsel to represent it in multiple pending actions. The City sought representation from a law firm that was removed from Indiana politics. Christine Vasquez, a representative of the City, contacted the secretary of Charles Jackson, a partner employed by plaintiff. Vasquez knew Jackson from their previous employment together at another law firm. Vasquez submitted some of the complaints filed against the City for Jackson to review and to consider if he wished to pursue representation of the City. The next day, Jackson spoke Carmen Fernandez, the City's corporation counsel, about the possibility of plaintiff representing the City. Jackson later sent an e-mail to Fernadez outlining three different pricing options. In May 2005, Fernandez responded to Jackson's e-mail and indicated which fee option the City would like to choose. The City selected a fee structure based on hourly rates of Jackson at $540; another partner at $475; associates ranging from $235 to $285. During May and June 2005, the parties continued to negotiate plaintiff's representation of the City with meetings in East Chicago and communications sent from plaintiff in Illinois to the City's representative's in Indiana. In June 2005, plaintiff's standard retention letter was hand-delivered to the City and signed by George Pabey, the City's mayor, and Charles Pacurar, the City's city controller. The retention agreement included the previously agreed-upon legal fees that plaintiff would bill the City for its work. Additionally, the parties agreed that plaintiff's attorneys would

be admitted *pro hac vice* as attorneys practicing in Indiana.

During plaintiff's representation of the City, plaintiff's attorneys continued to work on the City's cases from its Chicago office. However, all court appearances occurred in Indiana. Documents were passed between Illinois and Indiana for review and approval and depositions were held in Illinois. The parties communicated via telephone calls, e-mails, faxes, and meetings. Some of the meetings took place at plaintiff's Chicago office. Further, plaintiff's attorneys prepared a database of information on the pending lawsuits in its Chicago office, which was accessible over the internet by the City's representatives in East Chicago. Payments were made by the City in East Chicago and submitted to plaintiff's Chicago office.

In August 2009, the trial court conducted a hearing on the City's motion to dismiss. In September 2009, the trial court issued its written order denying the City's motion to dismiss for lack of personal jurisdiction "after considering the briefs, affidavits, and exhibits submitted" by the City and plaintiff and "after hearing oral arguments from the parties." Specifically, the court found:

> "[P]ersonal jurisdiction exists over Defendant pursuant to 735
>
> ILCS 5/2-209(c). The Court further finds that personal jurisdiction
>
> does not exist over Defendant pursuant to 735 ILCS 5/2-209(b).
>
> The Court makes no finding as to whether personal jurisdiction
>
> exists over Defendant solely pursuant to 735 ILCS 5/2-209(a) in
>
> light of its finding that personal jurisdiction exists over Defendant
>
> pursuant to 735 ILCS 5/2-209(c)."

1-09-2549

In September 2009, the City's filed a petition for leave to appeal pursuant to Supreme Court Rule 306(a)(3), seeking leave from this court to appeal the denial of the motion to dismiss, which this court granted in October 2009.

On appeal, the City argues that the trial court erred in finding that the City, an Indiana municipal corporation, had sufficient contacts to subject it to personal jurisdiction under the Illinois long-arm statute. The City contends that the undisputed facts establish that it did not maintain sufficient contacts to satisfy the due process requirements under the United States and Illinois Constitutions and section 2-209(c) of the Illinois long-arm statute. Plaintiff maintains that the trial court correctly determined that it had personal jurisdiction over the City based on its numerous contacts with Illinois in regard to its contractual relationship with plaintiff. In the alternative, plaintiff asserts that the trial court has general jurisdiction over the City pursuant to section 2-209(b)(4) of the long-arm statute because the City does business in Illinois.

It is the plaintiff's burden to establish a *prima facie* case for personal jurisdiction over the defendant. Roiser v. Cascade Mountain, Inc., 367 Ill. App. 3d 559, 561 (2006). "Conflicts between the parties' affidavits will be resolved in favor of the plaintiff for the purposes of establishing a *prima facie* case for personal jurisdiction over the defendant." Estate of Isringhausen v. Prime Contractors & Associates, Inc., 378 Ill. App. 3d 1059, 1063 (2008). When a trial court determines jurisdiction solely based on documentary evidence, as it did in this case, our review is *de novo*. Sabados v. Planned Parenthood of Greater Indiana, 378 Ill. App. 3d 243, 246 (2007).

Traditionally, "[i]n determining whether an Illinois court may assert personal jurisdiction

6

over a nonresident defendant, Illinois courts employ a two-prong analysis to evaluate whether the facts of the case meet the requirements for (1) personal jurisdiction under the Illinois long-arm statute (735 ILCS 5/2-209 (West 2006)) and (2) due process under both the United States and Illinois Constitutions." Hanson v. Ahmed, 382 Ill. App. 3d 941, 943 (2008), citing Rollins v. Ellwood, 141 Ill. 2d 244, 275 (1990); Commerce Trust Co. v. Air 1st Aviation Cos., 366 Ill. App. 3d 135, 140 (2006). Additionally, "[s]ection 2-209(c) of Code of Civil Procedure contains a 'catch-all' provision providing that an Illinois court may 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " Morris v. Halsey Enterprises Co., 379 Ill. App. 3d 574, 579 (2008), quoting 735 ILCS 5/2-209(c) (West 2004). "Thus, if the contacts between a defendant and Illinois are sufficient to satisfy both federal and state due process concerns, the requirements of Illinois' long-arm statute have been met, and no other inquiry is necessary." Kostal v. Pinkus Dermatopathology Laboratory, P.C., 357 Ill. App. 3d 381, 387 (2005).

For an assertion of personal jurisdiction to satisfy due process, the defendant must have "certain minimum contacts with [the state] such that * * * maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citation.]" International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945). "The 'minimum contacts' required for personal jurisdiction differ depending on whether general jurisdiction or specific jurisdiction is being sought." Keller v. Henderson, 359 Ill. App. 3d 605, 613 (2005). For a court to have general jurisdiction over a nonresident defendant, the defendant has " ' "continuous and systematic general business contacts," ' " such that it may be sued in the

forum state for suits unrelated to its contacts within the forum. Keller, 359 Ill. App. 3d at 613, quoting Alderson v. Southern Co., 321 Ill. App. 3d 832, 857 (2001), quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 412, 104 S. Ct. 1868, 1873 (1984). In contrast, a court has specific jurisdiction over a defendant only if the suit arises out of its contacts with the forum state. Keller, 359 Ill. App. 3d at 613. Plaintiff has asserted that the trial court has both general and specific jurisdiction over the City.

First, we consider whether the trial court has general jurisdiction over the City. Section 2-209(b) outlines the instances in which Illinois has general jurisdiction over a nonresident corporation, and only subsection (b)(4) could be applicable in this case. Under section 2-209(b)(4), a court may exercise jurisdiction over a defendant that is "doing business within this State." 735 ILCS 5/2-209(b)(4) (West 2008). " 'Illinois limits general jurisdiction over nonresidents to instances in which the nonresident was present and doing business in the forum.' " Compass Environmental, Inc. v. Polu Kai Services, L.L.C., 379 Ill. App. 3d 549, 558 (2008), quoting Bolger v. Nautica International, Inc., 369 Ill. App. 3d 947, 951 (2007). This "doing business" standard is very high and requires the nonresident corporation's business activity in Illinois to be carried on, not casually or occasionally, but with a fair measure of permanence and continuity. Roiser, 367 Ill. App. 3d at 562. This requirement means that " '[i]n effect, the foreign corporation has taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities in Illinois.' " Roiser, 367 Ill. App. 3d at 563, quoting Riemer v. KSL Recreation Corp., 348 Ill. App. 3d 26, 35 (2004). "Although there may be no such all-inclusive test, almost all Illinois cases determining the existence of personal

jurisdiction over foreign corporations have based their findings upon the existence of factors such as offices or sales activities in Illinois." Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd., 230 Ill. App. 3d 308, 319 (1992).

Here, we find that Illinois courts cannot exercise general personal jurisdiction over the City. The City does not transact business in Illinois; it is a municipal corporation located in Indiana. It does not have offices, employees or sales activities in Illinois. The invoices submitted by plaintiff to support its assertion of general jurisdiction relate to instances in which the City hired Illinois companies to perform services for it in Indiana. These invoices include construction work, repairs and internet services. Since the City does not conduct business activities "with a fair measure of permanence and continuity" in Illinois, Illinois courts do not have general jurisdiction over the City.

Next, we consider whether Illinois courts have specific personal jurisdiction over the City. The trial court found that personal jurisdiction was proper pursuant to the "catch-all" provision, section 2-209(c), of the long-arm statute. 735 ILCS 5/2-209(c) (West 2008). The City argues that it did not have sufficient minimum contacts with Illinois to support personal jurisdiction.

To determine whether the due process standard has been met, we consider whether (1) the nonresident defendant had "minimum contact" with Illinois such that there was "fair warning" that the nonresident defendant may be haled into an Illinois court; (2) the action arose out of or related to the defendant's contacts with Illinois; and (3) it is reasonable to require the defendant to litigate in Illinois. Estate of Isringhausen, 378 Ill. App. 3d at 1065. In other words, the defendant

9

should be able to "reasonably anticipate" being called into an Illinois court. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75, 85 L. Ed. 2d 528, 542, 105 S. Ct. 2174, 2183 (1985).

In determining minimum contacts, the focus is on the nonresident defendant's conduct.

> " 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Burger King, 471 U.S. at 474-75, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183, quoting Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1239-40 (1958).

"The minimum contacts analysis must be based on some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, in order to assure that a nonresident will not be haled into a forum solely as a result of random, fortuitous, or attenuated contacts with the forum or the unilateral acts of a consumer or some other third person." Roiser, 367 Ill. App. 3d at 562, citing Burger King Corp., 471 U.S. at 474-75, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183. "The requirements of 'minimum contacts' and 'fair warning' are satisfied if defendant has 'purposefully directed' his activities at Illinois residents, reached out beyond one state to create continuing relationships with citizens of another state or purposefully

derived benefits from his interstate activities." Kalata v. Healy, 312 Ill. App. 3d 761, 769 (2000).

The record establishes that the City's contact with Illinois was as follows:  it contacted one of plaintiff's attorneys to inquire if plaintiff would be interested in representing the City in numerous Indiana lawsuits; the City's representatives attended multiple meetings with plaintiff's attorneys at plaintiff's Chicago office; the City's representatives communicated with plaintiff's attorneys in Illinois via telephone, e-mail and fax; the City sent its payments to plaintiff in Illinois; and the City's representatives accessed a database over the internet that plaintiff's attorneys created in Illinois.

After considering the federal due process principles and the documentary evidence presented, we conclude that plaintiff has made a *prima facie* showing that the City had purposefully directed its activities at an Illinois resident and derived a benefit from those interstate activities.  Contrary to the City's assertion otherwise, it initiated plaintiff's representation of the City in the Indiana lawsuits.  While the City's search for representation might not have been focused solely on plaintiff, Vasquez, a representative of the City, contacted Jackson, one of plaintiff's attorneys, to inquire if plaintiff would be interested in representing the City.  This was the initial contact without which the representation would not have occurred.  Jackson's decision, on plaintiff's behalf, to pursue the possible representation was in response to the City's contact.  In contacting an attorney in plaintiff's Chicago office, the City intentionally sought the benefits and privileges of using an Illinois law firm as it wished to have representation removed from Indiana politics.  The City's contact with Illinois continued through the

11

representation in meetings and other communications. The City reached out beyond state lines to Illinois for its representation and derived benefits from plaintiff's representation, in that most of the Indiana cases were resolved in the City's favor. As to the second factor, this action directly arose from the City's contacts with Illinois. Plaintiff's complaint seeks payment of legal fees owed by the City for plaintiff's work on the City's behalf in the Indiana cases.

In considering the third factor, whether it is reasonable to require the City to litigate in Illinois, the Supreme Court has outlined five factors to consider: (1) the burden on the defendant of defending the action in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action, and (5) the shared interests of the several states in advancing fundamental social policies. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564 (1980). Additionally, "[b]ecause defendant has purposefully directed [its] activities at an Illinois resident, [it] must present a compelling case that jurisdiction is unreasonable." Kalata, 312 Ill. App. 3d at 769-70. " 'In general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.' " Kalata, 312 Ill. App. 3d at 770, quoting CoolSavings.Com, Inc., v. IQ.Commerce Corp., 53 F. Supp. 2d 1000, 1005 (N.D. Ill.1999), citing Burger King, 471 U.S. at 477, 85 L. Ed. 2d at 544, 105 S. Ct. at 2184.

The City asserts no presumption exists because the record does not support a finding of

minimum contacts. As we have already concluded that sufficient minimum contacts have been established, the City's assertion has no merit. The first factor is the burden on the City of defending the action in Illinois. This burden is minimal as the City is located in close proximity to Illinois. Further, "[i]t has been held, however, that when a defendant enters the forum state in furtherance of a business transaction, it is not unreasonable or unduly burdensome to require the defendant to return and litigate there." Viktron Ltd. Partnership v. Program Data Inc., 326 Ill. App. 3d 111, 123 (2001). The City chose to enter into a business relationship with an Illinois resident and continued that relationship across state lines. The City has not argued how litigating in Illinois would be inconvenient. The second factor considers Illinois's interest in adjudicating the dispute. Illinois has a strong interest here as the dispute involves the nonpayment of legal fees due to an Illinois law firm. Third, we weigh plaintiff's interest in litigating in Illinois. Plaintiff has a place of business in this state and chose to seek relief in this state. These facts indicate that plaintiff has an interest in litigating in Illinois. The City presents nothing apart from its assertions that its performance only occurred in Indiana. While none of the arguments presented on this point strongly favor one side, it is the City's burden at this point to present a compelling case that an exercise of jurisdiction would be unreasonable. It has not done so on this point. Fourth, the interest of the interstate judicial system in efficient resolution of the case, does not affect this case as there is a minimal burden between Illinois and Indiana and the City has not asserted how Illinois would be inefficient to interstate judicial system. The final consideration is the shared interest in the several states in advancing fundamental social policies. As with the other factors, the City has not offered any argument. Illinois has policy considerations under this

13

case because an Illinois law firm should not be prevented from filing an action to seek payment of legal fees after a nonresident defendant sought out the Illinois law firm and then failed to pay for those legal services. Here, plaintiff was approached by the City for legal services, but suffered when the City failed to pay for the legal services. After considering all five factors, we find that the City has not presented a compelling argument that jurisdiction in Illinois is unreasonable. Accordingly, we find that federal due process standards have been satisfied.

We next consider the Illinois due process requirements. The City contends that Illinois due process is "even more rigorous" than federal due process and does not exist in this case because it engaged in no Illinois activity that would reasonably expect it to being summoned to an Illinois court. Plaintiff argues that the City has forfeited this claim by not raising it in the trial court. However, the City's memorandum in support of its motion to dismiss did raise Illinois due process standards, and therefore, this issue has not been forfeited.

In Illinois, "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." Rollins, 141 Ill. 2d at 275. While the City asserts that the Illinois due process requirements are "more rigorous" than federal standards, it has failed to cite any authority to support that point. Rather, Illinois courts have noted the opposite. "While acknowledging the Rollins court's concern that the due process standard of the Illinois Constitution and that of the United States Constitution hypothetically might diverge in some cases, these courts have suggested that no operative difference exists between the federal limitations on personal jurisdiction and the limits

14

imposed by the Illinois Constitution." Kostal, 357 Ill. App. 3d at 388, citing Hyatt International Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997); Klump v. Duffus, 71 F.3d 1368, 1372 n.4 (7th Cir. 1995). Further, the Kostal court noted that it had not "found any post- Rollins Illinois case dealing with *in personam* jurisdiction where the requirements of federal due process were deemed to be met, but Illinois' due process requirements were not," though the supreme court continued to leave open the possibility that such circumstances could exist. Kostal, 357 Ill. App. 3d at 388.

Accordingly, we consider whether the Illinois due process standards have been met in this case. The City simply contends that the required minimum contacts do not exist and it did not engage in any Illinois activity that would reasonably give rise to the expectation of being subject to the Illinois court system. This argument ignores the fact that the City intentionally sought a business relationship, *i.e.*, legal representation, with an Illinois law firm and continued that relationship across state lines. Under the Rollins standard, the nature of these acts affected interests in Illinois. As the City's failure to pay plaintiff for its legal work clearly affected interests in Illinois, Illinois due process standards have been satisfied.

Since section 2-209(c) of the Illinois long-arm statute permits the "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States" (735 ILCS 5/2-209(c) (West 2008)), the trial court may properly assert personal jurisdiction over the City. Both federal and Illinois due process standards have been met in this case and personal jurisdiction over the City is proper. Accordingly, the trial court did not err in denying the City's motion to dismiss for lack of personal jurisdiction.

15

1-09-2549

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and J. GORDON, J., concur.