Titzel Engineering, Inc. Mercantile Tax Case.

Argued November 13, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Regis C. Nairn,* Assistant City Solicitor, with him *David W. Craig,* City Solicitor, for City of Pittsburgh, appellant.

*Niles Anderson,* Solicitor, and *Justin M. Johnson,* Assistant Solicitor, for School District of Pittsburgh, appellant.

*Robert A. Rundle,* with him *George I. Minch,* and *Wright & Rundle,* for appellee.

OPINION BY WOODSIDE, J., December 16, 1964:

We have before us two appeals from orders of the County Court of Allegheny County setting aside mercantile taxes which had been imposed upon Titzel Engineering, Inc. by the City of Pittsburgh and the School District of Pittsburgh. The only question is whether the engineering company (Titzel), a Pennsylvania corporation, was engaged in manufacturing the items for the sale of which the taxes were imposed upon it as a dealer.

The school district assessed its tax under the Act of June 20, 1947, P. L. 745, as amended and re-enacted, 24 P.S. §582.1 et seq., which exempts from the tax "any person vending or disposing of articles of his own . . . manufacture."

The city assessed its tax under an ordinance authorized by the Act of June 25, 1947, P. L. 1145, as amended, 53 P.S. §6851 et seq., referred to as the "Tax

Anything Act." This act withholds from the city the authority to tax goods and articles manufactured and to tax any privilege, act or transaction related to the business of manufacturing.

Although the language of the two acts differ, neither the city nor the school district is entitled to the tax if the machines sold by Titzel were manufactured by it. *Koolvent Aluminum Awning Co. v. Pittsburgh,* 186 Pa. Superior Ct. 233, 236, 142 A. 2d 428 (1958) and cases there cited.

Titzel sells for use in steel mills various types of cranes, descaling systems, drying ovens, and other large, heavy machinery, all tailor-made according to individual specifications. The machines are designed by Titzel, who upon approval of the designs by the customer, orders the materials, fabricates a part of the machine in its own shop, and has the more massive parts of the machines made in the shop of another corporation under the direction and supervision of a Titzel engineer. The machines, only partly assembled, are then sent to the customer's steel mill where they are erected, assembled, and connected to the customer's other equipment.

The work at the customer's mill is sometimes performed by Titzel's own men, but, due to union requirements and regulations, is more frequently performed by employees at the site or by subcontractors engaged for the purpose by Titzel's engineers. Workmen engaged at the site are responsible to Titzel and not to its customers.

Titzel's plant is a three-story building, about 40 feet by 95 feet. The first floor is used for storage; the second floor is used as a shop; and the third floor is used for engineering and executive offices.

From four to six employes work in the shop. All parts of the machines capable of being made at the Titzel shop are made there, but the more massive parts

cannot be fabricated or assembled at the Titzel shop and are made at the plant of another company. No item of machinery or equipment sold by Titzel is made entirely apart or away from Titzel's shop.

We agree with the following extracts from the opinion of the court below written by President Judge LENCHER, who carefully reviewed and ably analyzed the facts and law governing these cases:

"There can be no question but that the plant equipment and machinery made and sold by Titzel Engineering, Inc. are manufactured products. Nothing that Titzel Engineering, Inc. so makes and sells is standard, all items being tailor-made to suit the customer's individual requirements. The raw material must be cut, fitted, milled, fabricated, assembled, wired, joined and connected into one end product, whether the product be a crane, a descaling system or other piece of plant machinery. All of the elements applicable to a manufactured product are present, including a substantial transformation in form, qualities and adaptability in use; the giving of new shapes to matter; and the making of a new and different useful article or product—all brought about by the application of care, skill and labor to materials.

"A portion of the work of the manufacturing of each article of plant equipment and machinery sold by Titzel Engineering, Inc. is performed at the shop and plant of Titzel Engineering, Inc. on Forty-second Street, Pittsburgh by the employees of Titzel Engineering, Inc. Since Titzel Engineering, Inc. does not do milling, and since items of such plant equipment and machinery are extremely large and heavy, part of the work on such items must be and is done at an outside plant of sufficient size and capacity to handle such additional work. The work is at all times under the control of a contract engineer of Titzel Engineering, Inc. who coordinates the work done at the Titzel En-

gineering, Inc. plant with whatever work is done at the outside plant. The final part of the work is completed at the customer's site or plant under the direction of the contract engineer of Titzel Engineering, Inc., local labor or subcontractors being usually employed for that purpose. While the work done at an outside plant is in most cases necessary, that work is only part of the manufacturing process involved. It is the work done at the Titzel Engineering, Inc. plant, plus the work done at an outside plant, plus the final assembly, erection, wiring and connection at the customer's plant that brings about the end result of the completed and installed piece of machinery or equipment.

"While part of the work of manufacturing the finished product is performed away from the plant of Titzel Engineering, Inc., that fact in no way limits or affects the right of Titzel Engineering, Inc. to exemption from mercantile license taxes on the sales of the plant equipment and machinery so designed, manufactured and sold. It is seldom that all parts of a manufactured article are manufactured by the same person or corporation, and more than one person or corporation may participate or be engaged in the manufacture of one article." See *Philadelphia School District v. Rosenberg,* 402 Pa. 365, 368, 369, 167 A. 2d 259 (1961) ; *Hazen Engineering Co. v. Pittsburgh,* 189 Pa. Superior Ct. 531, 151 A. 2d 855 (1959).

The city and school district admit that the machines are manufactured, but they contend that the manufacturing is not done by Titzel but by the company which makes the massive parts of the machines. Contending that Titzel's connection with the machines is that of engineering and assembling them, the appellants rely upon two cases: *Hazen Engineering Co. v. Pittsburgh,* supra, 189 Pa. Superior Ct. 531, 151 A. 2d 855 (1959), and *Philadelphia School District v. Parent*

*Metal Products, Inc.,* 402 Pa. 361, 167 A. 2d 257 (1961).

Hazen Engineering Co. was a Pittsburgh company which we held to be liable for the mercantile tax because it was engaged in engineering and not in manufacturing. We said there: "We would be likely to include among those engaged in the manufacturing of an automobile, not only those employes of the corporation who handle the parts and operate the machines on the assembly line and their foremen, but also the designers who originate the style, the draftsmen who prepare the plans, the inspectors who test the component parts and the drivers who test the finished product. All are a part of the process of manufacturing an automobile, and necessary to the creation of the end product which the corporation makes to sell. On the other hand, the person whose mind conceives of a new machine, who patents it, and who prepares plans from which another person makes it, is generally looked upon as the inventor but not the manufacturer of the machine. Likewise, the person who prepares the blueprints from which another produces a device is generally looked upon as rendering engineering services and not manufacturing services." The services rendered by the Hazen Engineering Co. in planning, laying out, testing and supervising the manufacturing, we concluded, were engineering and inspecting services, but not manufacturing services.

There is a material difference between the operations of Hazen and Titzel. The machines which Hazen sold were made *entirely* by the employes of another company under the immediate direction of the foreman of the other company in the plant of the other company. Hazen had no manufacturing plant of its own. The machines which Titzel sells are made partly by its own men in its own plant. The cases cited by us in the *Hazen* case and the reasoning applied there

which caused us to conclude Hazen was not manufacturing the machines it sold, leads us with equal force to the conclusion that Titzel is manufacturing the machines it sells. That Titzel also designs the machines (an engineering service) and has parts of them manufactured in another plant and puts various manufactured parts together (assembles them) does not change its status as a manufacturer.

The rules for determining when a company is engaged in manufacturing have been firmly established and uniformly applied in Pennsylvania for many years, even though the application of the rules to particular facts has often been difficult. These rules have been most recently repeated by our Supreme Court in *Commonwealth v. Berlo Vending Co.*, 415 Pa. 101, 104, 202 A. 2d 94 (1964), in the following language: " 'Manufacturing' as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: [citing] Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: [citing] If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production: [citing]"

These rules were quoted from *Philadelphia School District v. Parent Metal Products, Inc.*, supra, 402 Pa. 361, 364, 167 A. 2d 257 (1961), upon which the appellants here rely. In applying these rules in the *Parent Metal Products* case, the Supreme Court concluded that that company was not a manufacturer. The Court said, p. 364, "Appellee merely changes them from parts

of benches . . . into whole benches . . . through the process of assembly or mechanical operation. *This* assembly process is not manufacturing." [emphasis supplied]. It should not be gathered from this statement that assembling parts is not manufacturing. An automobile is manufactured from frames, wheels, fenders, cushions, windshields, doors, engines, radiators, generators, batteries, light globes, spark plugs and a thousand other parts, *all* of which might possibly be manufactured by other companies. Applying the tests used by the Supreme Court since *Norris Brothers v. The Commonwealth,* 27 Pa. 494 (1856), leaves no doubt that making an automobile would be manufacturing whether or not it was merely the assembling of parts manufactured by many other companies. Except for the simplest items, such as screws, cloth and glass, manufacturing today is largely the assembling of many manufactured parts from which are made "a new, different and useful article." Assembling is an indispensable part of the making of all complicated articles and is a part of the manufacturing process of all such articles.

The Supreme Court, we are sure, had no intention of injecting into the law a new and different test of "manufacturing" by its reference to "assembling" in the *Parent Metal Products, Inc.* case. Of course, assembling is not always manufacturing. A father playing Santa Claus on Christmas Eve may suffer the problems of a manufacturer as he assembles his son's toy truck, but he would not be thought of as a manufacturer. On the other hand, a company using employes to assemble many parts to create a new, different and useful article would be thought of as a manufacturer and not an assembler.

Titzel puts together many different articles and products, from which a new creation emerges. In doing so, it performs an engineering service by designing

the machines and, of course, it assembles the machines. The fact remains, however, that by the application of labor and skill to the materials and articles which it purchases, these materials and articles are changed into cranes, scales and other machinery—"new, different and useful articles." It manufactures the machines.

Orders affirmed.