**WORLDTRONICS INTERNATIONAL, INC., Plaintiff,**

v.

**EVER SPLENDOR ENTERPRISE CO., LTD., Defendant**

**No. 97 C 199.**

United States District Court, N.D. Illinois, Eastern Division.

July 10, 1997.

1483, 1488, 75 L.Ed.2d 413 (1983). Benson's claim does not arise under section 1985(2).

Thomas K. Stine, Alan L. Barry, Richard C. Himelhoch, James Perry Muraff, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, for plaintiff.

Keith D. Parr, Edward P. Gibbons, Lord, Bissell & Brook, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.

Plaintiff Worldtronics International, Inc. ("Worldtronics") has sued Defendant Ever Splendor Enterprise Co., Ltd. ("Ever Splendor"), claiming patent infringement. Presently before the Court is Defendant's Motion to Dismiss Based on Lack of Personal Jurisdiction, brought pursuant to Fed.R.Civ.P. 12(b)(2).

## BACKGROUND

Worldtronics is the current owner of U S. Letters Patent No. 4,566,802, which issued on January 28, 1986 for an invention entitled "Electronic Cycle Timer for a Household Appliance." Worldtronics is incorporated in Illinois the location of its principle place of business. Ever Splendor manufactures coffee makers that Worldtronics alleges infringe its patent. Ever Splendor is a Taiwanese corporation, with its principal place of business in Taipei, Taiwan, Peoples' Republic of China, and manufactures the coffee makers in Taiwan and mainland China. Worldtronics alleges in its Complaint that Ever Splendor has been, and still is, infringing its patent by making, using, selling, offering for sale and/or importing for sale coffee makers and/or timing devices embodying the elements of two claims of the patent, and/or is inducing or contributing to the same.

However, Ever Splendor avers, through its sales manager Jenny Wang, that it: (1) has no exclusive or regular distributor in the State of Illinois; (2) does not use, sell, or offer to sell the allegedly infringing products in the United States; (3) does not import the products into the United States; (4) makes all of the products in Taiwan or Hong Kong; (5) sells all of the products free on board (f.o.b.) Taiwan or Hong Kong; and (6) delivers the products to purchasers in Taiwan or Hong Kong, where it relinquishes control of the products to the purchaser, who can ship those products anywhere in the world at its discretion. (Wang Aff. ¶¶ 9–18).

Worldtronics, in turn, submits voluminous, undisputed evidence demonstrating that the products manufactured by Ever Splendor end up in the United States, including Illinois, where they are sold to consumers at national retail stores including Target and K Mart. Significantly, the process occurs through an established distribution channel, whose destination is known to Ever Splendor. For example, Ever Splendor sells allegedly infringing products to Ying Fat in Taiwan, who in turn sells the products to Sunbeam, who then sells the products under the "Oster" trade name within national retail chains, including Target and Service Merchandise, throughout Illinois and the United States. When asked at her deposition whether Ever Splendor makes a product that Oster sells in the United States, Jenny Wang responded "No," consistent with her affidavit, but with the elaboration that Ever Splendor's customer Ying Fat sells to Oster. Upon further questioning, she clarified that the Oster product ends up in the United States "because we sell to Ying Fat, and Ying Fat told us that they sell to U.S." (Pl.'s ex. 1, Wang Dep. at 61–62). Indeed, Ever Splendor has met with Sunbeam at the Chicago Housewares Show. (Pl.'s ex. 57). In the same vein, Ever Splendor has sent product samples to United States companies including Mr. Coffee and Hamilton Beach, although Ever Splendor does not sell the product directly to the companies. (Pl.'s ex. 1 at 124).

This distribution channel is further demonstrated by the following questions and answers at the deposition of David St. George, an employee of Ever Splendor's customer High Performance Appliances ("HPA"):

Q: Could you explain to me what the distribution system of HPA is?

A: We purchase products on an OEM basis f.o.b. Hong Kong or Taiwan. We bring them into either our warehouse if it's domestic sale or directly to K Mart's warehouses and distribute to retailers from that point on. . . .

Q: So, for example, the coffee makers that you indicated earlier were manufactured by Ever Splendor, you purchased

them from Ever Splendor and then Ever Splendor ships them to your warehouse?

A: Either to our warehouse or to K Mart's warehouse.

. . . .

Q: How does Ever Splendor know where to ship the product?

A: There's a K Mart liaison office in both Hong Kong and Taiwan. They're instructed.

Q: How does Ever Splendor know where to ship the product that is designated for HPA's warehouse [on the West Coast]?

A: It's so stated on [HPA's] purchase order.

(Pl.'s ex. 13, St. George Dep. at 21–22). Mr. St. George further explained that, pursuant to contract, Ever Splendor obtains and pays for both listing by Underwriters Laboratory and products liability insurance and certifies that the products meet FDA standards, which are relevant only to products destined for the United States. (*Id.* at 36, 65–66, 79–81, 83–84). Likewise, Ever Splendor indemnifies HPA against patent litigation, (*id.* at 54), including a pending case brought by Worldtronics against HPA in Illinois. In the event that the present Motion is denied, this action shall be reassigned as related to the HPA case pursuant to Local Rule 2.31. HPA's counsel in the present case also represents HPA in the related case.

## ANALYSIS

 A federal court sitting in Illinois may exercise personal jurisdiction only if an Illinois state court could do so. *Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987). A plaintiff must make a prima facie showing of personal jurisdiction. *IBM v. Martin Property & Casualty Ins. Agency, Inc.*, 281 Ill. App.3d 854, 217 Ill.Dec. 197, 199, 666 N.E.2d 866, 868 (1st Dist.1996); *Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724, (7th Cir.1994). In order to establish the personal jurisdiction of a federal court, plaintiff must (1) demonstrate a basis for asserting jurisdiction under state law and (2) meet the minimum contacts requirement of the Due Process Clause. In Illinois, whose long-arm statute governs pursuant to

Fed.R.Civ.P. 4(k), these two requirements are now merged in the following "catch-all" provision:

> A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

735 ILCS 5/2–209(c)(Smith–Hurd 1993). This provision renders the scope of Illinois courts' personal jurisdiction co-extensive with the limits of due process. *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1311 n. 5 (7th Cir. 1990); *L.B. Foster Co. v. Railroad Serv., Inc.*, 734 F.Supp. 818, 820–21 (N.D.Ill.1990). Thus, inquiry into whether Section 2–209 grants jurisdiction is "wholly unnecessary." *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992). Rather, personal jurisdiction is proper if the contacts between Ever Splendor and the State of Illinois satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV.

 A plaintiff establishes personal jurisdiction consonant with due process by demonstrating that, given the defendant's contacts with the forum state, a suit in the forum state does not offend " 'traditional notions of fair play and substantial justice.' " *Dehmlow v. Austin Fireworks*, 963 F.2d at 945 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The "minimum contacts" requirement is satisfied when an out of state defendant has " 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citation omitted)(alteration in original). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474, 105 S.Ct. at 2183. If a defendant purposefully directs its activities at a forum and the litigation arises out of or relates to those activities, then the "fair warning" requirement is satisfied, such that the defendant must reasonably anticipate being "haled into court" in the forum state. *Id.* at 472–76, 105 S.Ct. at 2182–83. In contrast, "random, fortuitous, or attenuated contacts"

will not solely confer jurisdiction, nor will "the unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. at 2183 (internal quotations omitted).

■ In support of its Motion, Defendant has submitted the affidavit of its sales manager, Jenny Wang, whose uncontested facts the Court must accept as true, notwithstanding contrary averments in Plaintiff's pleadings. Conversely, the Court takes uncontroverted allegations in Plaintiff's Complaint as true. Further, at this stage, the Court must resolve conflicts between the parties' evidence in Plaintiff's favor. *Alpert v. Bertsch,* 235 Ill.App.3d 452, 176 Ill.Dec. 333, 601 N.E.2d 1031 (1992).

■ Two recent decisions by the Federal Circuit compel denial of Defendant's Motion. *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576 (Fed.Cir. 1994) & *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed.Cir.1994). First, Beverly Hills Fan Co., a patent owner, sued Ultec, the Chinese manufacturer of an allegedly infringing product, and Royal, the New York importer and distributor of the product. Beverly alleged that the defendants sell tile product to customers in Virginia, the forum state, through intermediaries. Ultec averred that it does not directly ship the product to Virginia or directly sell to anyone in Virginia, and Royal likewise averred that it does not sell the product to distributors or anyone else in Virginia. Plaintiff then submitted evidence that Virginia outlets of Builder's Square, a national retail chain, had fifty-two units of the product available for sale, accompanied by a manual identifying Royal as the source of the product and a warranty that Royal would honor. The Federal Circuit found that the indirect shipments to Virginia were purposeful, as the fifty-two fans at Builder's Square bearing Royal's warranty reflected an ongoing, intentional relationship with the Virginia retailer and its customers. 21 F.3d at 1564. Specifically, the court found:

From these ongoing relationships, it can be presumed that the distribution channel formed by defendants and Builder's Square was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia.

*Id.* The Court then held that "the exercise of jurisdiction in a case in which an alleged foreign infringer's sole contact with the forum resulted from indirect shipments through the stream of commerce" comports with the Due Process Clause, where the uncontroverted allegations "are that defendants purposefully shipped the accused [product] into [the forum state] through an established distribution channel." *Id.* at 1564–65.

Having found purposeful minimum contacts, the Federal Circuit moved on to the next step: whether "fair play and substantial justice" defeats the reasonableness of jurisdiction. Id. at 1568 (quoting *Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 121–22, 107 S.Ct. 1026, 1037, 94 L.Ed.2d 92 (1987)). The court answered in the negative, finding that the burdens on Ultec and Royal of defending themselves in a foreign forum were not sufficiently compelling to outweigh Beverly's and Virginia's interests.[1]

The Federal Circuit revisited the personal jurisdiction issue a few months later in *North American Philips Corp. v. American Vending Sales Inc.,* 35 F.3d 1576, 1579–80 (Fed. Cir.1994) and held that the defendants' shipping products destined for the forum state, Illinois, under a similar distribution channel, but f.o.b. in Texas and California, did not preclude the exercise of personal jurisdiction in Illinois. The court relied upon the Supreme Court's emphasis of " 'the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences [that] are the real object of the … transaction.' " *Id.* at 1579 (quoting *Burger King,* 471 U.S. at 478–

---

1. The Court finally considered the applicability of the Virginia long-arm statute, noting that, despite making it co-extensive with due process, "the Virginia legislature also intended the particulars of the long-arm statute to be satisfied even though it could be argued that a lesser standard would meet due process." *Id.* at 1569 n. 23. However, as explained above, a federal court sitting in Illinois need not consider whether jurisdiction is proper under the specific provisions of the long-arm statute. *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir.1992).

79, 105 S.Ct. at 2185 (internal quotations and citation omitted)). The Federal Circuit found that purposeful contacts were made by the defendants, who

> voluntarily placed a substantial quantity of infringing articles into the stream of commerce conscious that they, were destined for Illinois. Regardless where the transactions are deemed to be situated under the tort or the "transacting business" provisions [of the Illinois long-arm statute], these defendants were nonetheless parties to the importation into the forum state. Surely the reasonable market participant in the modern commercial world has to expect to be haled into the courts of that state, however distant, to answer for any liability based at least in part on that importation. Further, since the importers [to whom defendants sold the products] were distributors, [the defendants] also knew or reasonably could foresee that the articles would be resold in Illinois....

*Id.* at 1580.

Ever Splendor's efforts to distinguish this binding precedent fail. First, Ever Splendor quotes the *Beverly* court's finding that "Since they are not directly controverted, plaintiff's factual allegations are taken as true for purposes of determining jurisdiction" and submits that Worldtronics' allegations are directly controverted by Jenny Wang's affidavit. 21 F.3d at 1563. However, like the defendant's denial of selling the product "to distributors or to anyone else in Virginia," Wang's averments are "either unartfully phrased or craftily written." *Id.* The only statement that on its face could be construed to preclude a finding of purposeful contacts—Ever Splendor delivers the products to purchasers in Taiwan or Hong Kong f.o.b., where it relinquishes control of the products to the purchaser, who can ship those products anywhere in the world at its discretion—is illuminated by Wang's deposition testimony to mean that the customer (*i.e.,* importer or distributor), not Ever Splendor, specifies to whom the products are destined (*ie.,* marketed), and Ever Splendor knowingly complies, such that it is on notice of its contacts with the forum and, thus, has an "opportunity to alleviate the risk of bur-

densome litigation there." *Burger King,* 471 U.S. at 475 n. 17, 105 S.Ct. at 2183 n. 17 (internal citation omitted); (Pl.'s ex. 1, Wang Dep. at 121, 134–35; *see also* Pl.'s ex. 13, St. George Dep. at 22). On their face, the remainder of Wang's vague statements neither contravene nor admit that Ever Splendor sells the product to customers in Illinois through an established distribution channel (*e.g.,* Ever Splendor does not use, sell, or offer to sell the allegedly infringing products in the United States). Accordingly, Worldtronics' evidence of an established distribution channel, with Ever Splendor positioned upstream and Illinois downstream, remains unchallenged.

Second, Ever Splendor mistakenly asserts that the defendants in *North American,* 35 F.3d 1576, were importers and distributors, whereas Ever Splendor is a manufacturer. On the contrary, the defendants at issue in *North American* were both manufacturers. *Id.* at 1577. The court found that, because the importers to whom the defendants sold the accused products were distributors, the defendants "knew or reasonably could foresee that the articles would be resold in Illinois." *Id.* at 1580. Thus, rather than being distinguishable, the present case is completely analogous to *North American,* because, like the *North American* defendants, Ever Splendor ships the accused product f.o.b. outside of Illinois to a customer who ships the product to Illinois (albeit sometimes through yet another customer).

Finally, Ever Splendor's reliance upon *Hollister, Inc. v. Coloplast A/S,* 16 U.S.P.Q.2d 1718, 1990 WL 141423 (N.D.Ill. 1990) is misplaced. Although predating *Beverly* and *North American, Hollister* recognized that a manufacturer may not shield itself from foreign jurisdiction by knowingly shipping to the forum via intermediaries. This holding was not prescient; rather, in so holding this Court followed the binding precedent of *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975), which the Federal Circuit ultimately adopted in *Beverly,* 21 F.3d at 1565 n. 15. However, in *Hollister* this Court found that the exercise of personal jurisdiction would violate due process because, in contrast to the present

case, no evidence demonstrated the defendant's knowledge that Illinois was a foreseeable destination for its product. Moreover, to the extent that the Federal Circuit drew inferences as to knowledge (i.e., "it can be presumed . . . that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia") that were equally reasonable under the facts of *Hollister*, but not drawn there, *Beverly* overruled *Hollister*. The evidence described in the background section of this Opinion, inter alia, amply demonstrates that such an inference is warranted in this case as well.

 Plaintiff having demonstrated the requisite minimum contacts to establish personal jurisdiction, Defendant bears the burden of showing why this Court's assertion of jurisdiction over it would be unreasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 477, 105 S.Ct. at 2184–85. Among the factors that courts may consider in making this determination are (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.* In the opinion of the Court, Defendant fails to show that these factors weigh in its favor. Worldtronics is domiciled in Illinois and was injured in Illinois, establishing both Worldtronics' and Illinois' significant interest in adjudicating the suit in this forum. *See Beverly*, 21 F.3d at 1568; *North American*, 35 F.3d at 1580. Further, like the Chinese defendant in *Beverly*, Ever Splendor's mere foreign status does not outweigh these interests. 21 F.3d at 1569. Moreover, as in *Beverly*, Ever Splendor, "through its business dealings with [HPA, etc., including indemnification], cannot profess complete ignorance of the judicial system of the United States." *Id.* Accordingly, the Court finds that the exercise of jurisdiction over Ever Splendor in Illinois would not be unreasonable.

## CONCLUSION

For the reasons given, the Court DENIES Defendant's Motion to Dismiss Based on Lack of Personal Jurisdiction.