# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Soria v. Chrysler Canada, Inc.**, 2011 IL App (2d) 101236

---

| | |
|---|---|
| Appellate Court Caption | ESTER SORIA, Plaintiff-Appellee, v. CHRYSLER CANADA, INC., Defendant-Appellant (Key Safety Systems, Inc., and Harvey Lee Sledge, Defendants). |
| District & No. | Second District<br>Docket No. 2-10-1236 |
| Filed | June 24, 2011 |
| Modified upon denial of rehearing | October 24, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A Canadian automobile manufacturer's motion to dismiss plaintiff's action for the loss of her vision when the door to the airbag module in one of defendant's vehicles fractured during deployment was properly denied, notwithstanding defendant's argument that the trial court lacked personal jurisdiction over defendant, since the trial court properly found that sufficient minimum contacts existed under either the broad or narrow version of the stream-of-commerce theory to exercise personal jurisdiction over defendant, especially when defendant purposefully availed itself of the privilege of conducting activities in Illinois and was aware that its products were distributed in Illinois, plaintiff's action arose out of or was related to defendant's contacts with Illinois, and Illinois's interest in resolving the dispute and advancing the substantive social policy of compensating victims of torts occurring in Illinois and ensuring the safety of vehicles on its roadways outweighed the burden placed on defendant by requiring it to litigate in Illinois and justified the conclusion that it is reasonable for Illinois to exercise personal jurisdiction over defendant, and, furthermore, defendant did not assert that Illinois due process analysis diverged from the federal due process analysis, and suit in Illinois was foreseeable as to any injuries resulting from defects in defendant's vehicles. |

| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-L-174; the Hon. J. Edward Prochaska, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Hugh C. O'Donnell, Nora C. Bloom, and Ryan J. McQueeney, all of Sanchez, Daniels & Hoffman LLP, of Chicago, and Cheryl A. Bush, of Bush Seyferth & Paige PLLC, of Troy, Michigan, for appellant.<br><br>Timothy M. Whiting and Brian C. Thomas, both of Whiting Law Group, Ltd., of Chicago, and Paul L. Redfearn and Michael D. Wallis, both of Redfearn Law Firm, P.C., of Kansas City, Missouri, for appellee. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Hudson and Birkett concurred in the judgment and opinion. |

## OPINION

¶ 1        Following an automobile collision that resulted in plaintiff Ester Soria's loss of vision, plaintiff sued various defendants, alleging that their negligence caused her injuries. Defendant, Chrysler Canada, Inc. (Chrysler Canada), the assembler of the vehicle in which plaintiff was a passenger, moved to dismiss plaintiff's complaint for lack of personal jurisdiction (735 ILCS 5/2-301 (West 2008)). The trial court denied Chrysler Canada's motion. Chrysler Canada appeals. For the following reasons, we affirm.

¶ 2                              I. BACKGROUND
¶ 3        This suit arose out of a January 1, 2009, vehicle collision in Rockford. Plaintiff, age 34, alleged that she was a passenger in a 1998 Plymouth Voyager minivan assembled by

Chrysler Canada in Windsor, Canada,[1] and sold to a consumer in Crystal Lake, Illinois. As a result of the collision, plaintiff lost vision in both of her eyes after the door to a passenger airbag module fractured during airbag deployment, sending out plastic fragments.

¶4    In September 2009, plaintiff sued defendants Chrysler LLC[2] (hereinafter Chrysler United States), Chrysler Canada, Key Safety Systems, Inc., and Harvey Lee Sledge, alleging that defendants' negligence caused her injuries. In a second amended complaint, plaintiff alleged that: (1) Chrysler Canada was negligent in its manufacture, assembly, design, testing, inspection, and sale of the airbag module doors (count I); (2) Key Safety Systems was negligent in developing and testing the airbag module doors (count II); and (3) Sledge, the driver of the vehicle that collided with the vehicle in which plaintiff was a passenger, was negligent while making a left turn by failing to yield the right of way and failing to keep a careful lookout (count III).

¶5    As to Chrysler Canada, plaintiff alleged that the company submitted itself to jurisdiction within Illinois. Specifically, plaintiff alleged that: Chrysler Canada knew that thousands of minivans and vehicles it manufactured were sold in the United States, including thousands in Illinois; about 85% of its production was exported to the United States in 2008; it delivered its minivans and vehicles into the stream of commerce with the expectation that a certain percentage would be sold in Illinois; it did business in Illinois within the meaning of the Illinois long-arm statute (735 ILCS 5/2-209 (West 2008)); and it (along with Chrysler United States) designed, developed, assembled, manufactured, distributed, and transferred into the stream of commerce the Plymouth Voyager in which plaintiff was a passenger during the collision, and it was aware that the airbag module doors were dangerous and did not pass internal standards.

¶6    On July 9, 2010, Chrysler Canada moved to dismiss plaintiff's second amended complaint for lack of personal jurisdiction, arguing that it lacked sufficient minimum contacts with Illinois. It argued that it did not design the subject minivan, select its components, or test any of the parts at issue. Chrysler Canada also denied that it designed, tested, manufactured, or assembled the passenger airbag modules or airbag module doors at issue or that it has any witnesses who could testify as to how the module or doors were designed. The Plymouth Voyager at issue, according to Chrysler Canada, was designed and sold by Chrysler United States, which was dismissed from the lawsuit. It further argued that it was merely the "final *assembler* of vehicle component parts that were designed and selected for integration into the subject minivan by other entities." (Emphasis added.) Chrysler Canada assembled the minivan based on Chrysler United States' specifications and,

---

[1]Chrysler's Windsor assembly plant is the "birthplace" of the minivan. The world's first minivan was assembled there on November 2, 1983.

[2]Chrysler LLC (subsequently known as Old Carco LLC and formerly as DaimlerChrysler Company LLC, DaimlerChrysler Corporation, and Chrysler Corporation) was subsequently voluntarily dismissed from the lawsuit. Chrysler LLC is a bankrupt debtor and sold the subject minivan to the consumer in Crystal Lake. Chrysler Canada is an indirect, wholly owned subsidiary of Chrysler LLC.

once it assembled and tested the vehicle, sold it to Chrysler United States. Title and possession transferred to Chrysler United States while the minivan was in Canada. Chrysler United States imported the vehicle to the United States and "had control over whether the subject minivan ultimately was delivered to the Illinois address that was indicated on the original vehicle order received by Chrysler Canada's Windsor Assembly Plant." In this respect, Chrysler Canada argued, it did not control or determine where the vehicle was to be marketed, sold, or distributed in the United States. Further, it did not decide upon warnings for the subject minivan or conduct compliance testing.

¶ 7    Chrysler Canada also argued that it is incorporated in Canada, has its principal place of business in Canada, and "has never transacted business, entered into contracts, owned real estate, maintained a corporate presence, telephone number, tax identification number, employees or agents in Illinois." Further, it contended that it did not ship, deliver, distribute, or sell the minivan in Illinois. Finally, Chrysler asserted that its "website is not directed to or interactive with Illinois residents."

¶ 8    Chrysler Canada attached to its motion to dismiss the deposition of Edward Masse, a former arbitration and litigation specialist for Chrysler Canada. There, Masse testified that Chrysler Canada knew that 82% of its production that it sells to Chrysler United States is distributed in the United States. Chrysler United States determines how many vehicles Chrysler Canada builds for Chrysler United States. Masse further testified that, on January 1, 2009, Chrysler Canada was aware that Chrysler United States had an independent dealership network in the United States and that there may be some dealerships in Illinois. Chrysler Canada did not implement recalls on the subject vehicle model in the United States market, but it did implement recalls in the Canadian market. Chrysler Canada has never performed compliance testing for American or Canadian motor vehicle safety standards; rather, Chrysler United States conducts all such compliance testing. Chrysler Canada "has no involvement" in the owner's manuals' contents for vehicles bound for the United States market. Chrysler United States dealerships do not order vehicles from Chrysler Canada or pay it for vehicles it assembles in Canada. Masse further testified that, in 2008 and 2009, Chrysler Canada employees had access to a Chrysler-United-States-owned warranty database that contained the dealer names and locations for Chrysler dealerships in the United States, including Illinois. Chrysler Canada does not provide warranty service or coverage on vehicles in the United States market. About 30% of Chrysler's North American vehicles are assembled in Canada, and several models were (in 2008 and 2009) exclusively built in Canada (including the Dodge Charger, Dodge Challenger, Chrysler 300, and Dodge Magnum). Further, there are indemnification clauses in Chrysler Canada's and Chrysler United States' vehicle-wholesaling agreement and their subcontracting-assembly agreement.

¶ 9    Also attached to Chrysler Canada's motion were its answers to various interrogatories. There, Chrysler Canada stated that it was aware of the number of vehicles it assembled that had Illinois addresses in the "Ship To" fields on their Monroney labels (*i.e.*, window stickers) or shipping orders. In 2008, 85% of the vehicles that Chrysler Canada assembled were destined for the United States market. Chrysler Canada "expected that at least some of the vehicles it assembled would likely be sold in the state of Illinois." Chrysler Canada denied that it "participated" in the Chicago Auto Show in 2008 and 2009 but agreed that vehicles

it "assembled" that were Chrysler United States products were displayed at the shows, "based on engineering specifications and drawings prepared and provided by Chrysler United States. All patents, trademarks and licensing are owned by Chrysler United States." Between 2008 and 2009, 29,393 vehicles built by Chrysler Canada were exported to Illinois.

¶ 10 On November 12, 2010, following a hearing, the trial court denied Chrysler Canada's motion to dismiss, finding that Chrysler Canada was not subject to general jurisdiction in Illinois but was subject to specific jurisdiction. As to specific jurisdiction, the court found that Chrysler Canada has sufficient minimum contacts with Illinois because it is aware that many of the vehicles it assembles and sells to Chrysler United States are distributed to Illinois and sold in Illinois. Further, the cause of action arose out of Chrysler Canada's commercial activities in Illinois. The court also found that the exercise of personal jurisdiction would not violate the standard of fair play and substantial justice, because Chrysler Canada admitted that it knew that many of its vehicles would be sold and driven in Illinois.

¶ 11 On December 10, 2010, Chrysler Canada petitioned for leave to appeal to this court (Ill. S. Ct. R. 306(a)(3) (eff. Feb. 26, 2010)), and, on January 25, 2011, we granted the petition.

## II. STANDARD OF REVIEW

¶ 13 When the trial court decides a jurisdictional question solely on the basis of documentary evidence and without an evidentiary hearing, as it did here, then the question is reviewed *de novo* on appeal. *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 561 (2006). On appeal, any conflicts in the pleadings and affidavits must be resolved in the plaintiff's favor. *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1080 (2010). "However, well-alleged facts within affidavits presented by the defendant must be taken as true notwithstanding the existence of contrary averments in the plaintiff's pleadings unless the defendant's affidavits are contradicted by affidavits presented by the plaintiff, in which case the facts in the plaintiff's affidavits prevail." *Keller v. Henderson*, 359 Ill. App. 3d 605, 611 (2005). If we determine that plaintiff has made a *prima facie* case for jurisdiction, we must then determine if there exist any material evidentiary conflicts. *Id.* If a material evidentiary conflict exists, we must remand the cause for an evidentiary hearing. *Id.*

## III. ANALYSIS

¶ 15 Chrysler Canada argues that the trial court erred in denying its motion to dismiss for lack of personal jurisdiction over the company. For the following reasons, we affirm the trial court's denial. Further, because the facts we rely on are not contested by Chrysler Canada, we conclude that we need not remand for an evidentiary hearing.

¶ 16 Section 2-209 of the Code of Civil Procedure (735 ILCS 5/2-209 (West 2010)) sets forth when Illinois courts will exercise personal jurisdiction over a defendant. Subsection (a), which governs specific jurisdiction, lists 14 different actions by a defendant that will subject it to Illinois jurisdiction. 735 ILCS 5/2-209(a)(1) through (a)(14) (West 2010). A defendant is subject to jurisdiction for "any cause of action arising from the doing of any" of these "acts," which include the transaction of business or the commission of a tort. 735 ILCS 5/2-

209(a)(1) through (a)(14) (West 2010). Subsection (b), which governs general jurisdiction, lists four grounds, only two of which apply to corporations: "(3) *** a corporation organized under the laws of this State; or (4) *** [a] corporation doing business within this State." 735 ILCS 5/2-209(b)(3), (b)(4) (West 2010). However, subsection (c) is a "catchall provision" that permits Illinois courts to " 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 561 (2006) (quoting 735 ILCS 5/2-209(c) (West 2002)). Subsection (c) permits an Illinois court to exercise personal jurisdiction to the extent permitted by the due process clause of the fourteenth amendment to the United States Constitution. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (the Illinois long-arm statute was amended in 1989 to add subsection (c), which is "coextensive with the due process requirements of the United States Constitution"). Accordingly, if the contacts between a defendant and Illinois satisfy both federal and Illinois due process requirements, an Illinois court may exercise jurisdiction, and we need not consider whether the defendant performed any of the acts enumerated in the long-arm statute. *Bell v. Don Prudhomme Racing, Inc.*, 405 Ill. App. 3d 223, 229 (2010). Accordingly, we focus our personal-jurisdiction analysis on whether the federal and Illinois due process requirements have been met in this case.

¶ 17                              A. Federal Due Process

¶ 18        To satisfy federal due process requirements, a nonresident defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The minimum contacts necessary for jurisdiction depend on whether the jurisdiction asserted is general or specific. *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1081 (2010). General jurisdiction exists when a defendant's general business contacts within the forum state are continuous and systematic. *Id.* Specific jurisdiction, which plaintiff asserts here, exists when the defendant purposefully directed its activities at the forum state's residents and the cause of action arose out of the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Personal jurisdiction is present under such circumstances because, where a defendant has purposefully availed itself of the privilege of conducting activities within a state, it invokes the benefits and protections of the state's laws, and it is therefore not unreasonable to require the defendant to submit to litigation in that forum. *Id.* at 475-76. Thus, under a federal due process analysis, an Illinois court has specific jurisdiction over a nonresident defendant when: (1) the defendant had minimum contacts with Illinois such that it was fairly warned that it may be haled into an Illinois court; (2) the action arose out of or was related to the defendant's contacts with Illinois; and (3) it is reasonable to require the defendant to litigate in Illinois. *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 401 Ill. App. 3d 947, 954 (2010); see also *Burger King*, 471 U.S. at 471-78.

¶ 19                                    1. Minimum Contacts

¶ 20        Here, Chrysler Canada argues that there is no evidence of minimum contacts between it and Illinois. It asserts that its *mere awareness* that vehicles it assembles might be distributed by Chrysler United States to Illinois does not show sufficient minimum contacts. Plaintiff responds that Chrysler Canada has sufficient minimum contacts and is subject to specific personal jurisdiction in Illinois because it *knows* that the vehicles it assembles for Chrysler United States enter Illinois through the stream of commerce and because it *intentionally serves* the United States market, including Illinois, by indirectly shipping its vehicles here.

¶ 21        The stream-of-commerce theory was first discussed in *World-Wide Volkswagen*. There, the Supreme Court stated that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased *** in the forum State." *Id.* at 297-98. The Court further stated that "if the sale of a product of a manufacturer or distributor *** is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States." *Id.* at 297 (holding that a single, unilateral action by New York vehicle purchaser in bringing automobile to Oklahoma, where accident occurred, did not establish sufficient minimum contacts necessary for personal jurisdiction in products-liability action against New York retail dealership or a related regional distributor).

¶ 22        The Supreme Court again addressed the stream-of-commerce theory in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987). In that case, Asahi, a Japanese manufacturer, was aware that its products were being sold in California, but it took no other action specifically directed at that state. The Court held that California could not exercise personal jurisdiction over Asahi because it would be *unreasonable*. *Id.* at 116. However, the Court split on the proper scope of the stream-of-commerce theory and whether sufficient *minimum contacts* with California had been established. Four justices, adopting a narrow stream-of-commerce theory, concluded that the mere placement of a product into the stream of commerce, without more, did not indicate an intent to serve the market in the forum state: "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* at 112 (O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.).[3] Another four justices, however, adopting a broad stream-of-commerce theory, concluded that sufficient minimum contacts had been established. *Id.* at 117 (Brennan, J., concurring in part, joined by White, Marshall, and Blackmun, JJ.). They held that personal jurisdiction over a foreign manufacturer is consistent with due process as long as the defendant is involved in "the regular and anticipated flow of

---

[3]Examples of the type of additional conduct that reflects an intent or purpose to serve the market in the forum state include: advertising in the forum state; providing advice to customers there; hiring a sales agent to market the product in the forum state; and designing the product for the forum state. *Id.*

products from manufacture to distribution to retail sale" and is "aware that the final product is being marketed in the forum State." *Id.* The justices concluded that this is so whether or not the defendant directly conducts any business in the forum state or engages in any additional conduct directed toward that state. *Id.* The ninth justice, Justice Stevens, joined by two justices who had joined Justice Brennan's concurring opinion, expressed no opinion as to whether the broad or narrow stream-of-commerce theory was correct; rather, he stated that the regular delivery of a large volume of Asahi's products into the California market constituted minimum contacts even under Justice O'Connor's narrow version of the stream-of-commerce theory. *Id.* at 121-22 (Stevens, J., concurring in part, joined by White and Blackmun, JJ.). Justice Stevens, like Justice Brennan, concurred in the result, however, because he believed that California's exercise of jurisdiction over Asahi was fundamentally unfair (*i.e.*, unreasonable). *Id.* (Our supreme court has noted that, under "either interpretation of the stream of commerce theory, it is clear that purposeful availment of the forum's market requires, at a *minimum*, that the alien defendant is '*aware* that the final product is being marketed in the forum State.' (Emphasis added.) [Citation.]" *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 160 (1988) (holding that, under either the broad or narrow stream-of-commerce theory, Japanese manufacturer of nine machines, four of which were sold in the United States, was not subject to Illinois long-arm jurisdiction where the manufacturer was not aware that the plaintiff's employer, who purchased the machines from the manufacturer in Japan, intended to transport two of the products into Illinois; manufacturer, therefore, made no effort, directly or indirectly, to serve Illinois market and the products were brought into Illinois solely by the employer's unilateral act).)

¶ 23    A recent case, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. ___, 131 S. Ct. 2780 (2011) (plurality op.), involved a British manufacturer's sale in New Jersey, through an independent United States distributor, of about one to four, allegedly defective, scrap metal machines. Also, company officials attended trade shows in states other than New Jersey. A plurality led by Justice Kennedy rejected the broad stream-of-commerce theory's, *i.e.*, Brennan's, fairness-and-foreseeability test. *McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2789 (Kennedy, J., joined by Roberts, C.J., and Scalia and Thomas, JJ.). The Kennedy plurality, viewing with favor Justice O'Connor's *Asahi* opinion (*i.e.*, the narrow stream-of-commerce theory), took the position that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2789. That is, jurisdiction is "a question of authority rather than fairness" (*McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2789), and the defendant must target the forum; it is insufficient "that the defendant might have predicted that its goods will reach the forum State" (*McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2788). According to the Kennedy plurality, although the facts showed McIntyre's intent to serve the New Jersey market, they did not show that McIntyre purposefully availed itself of the forum market. *McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2790.

¶ 24    Justice Breyer, joined by Justice Alito, concurred with the plurality's judgment, but rejected its reasoning. *McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2793 (Breyer, J., concurring, joined by Alito, J.) (rejecting both the Kennedy plurality's "strict no-jurisdictional rule" and the New Jersey Supreme Court's "absolute" or broad stream-of-commerce approach). Justice

Breyer took the position that the outcome was determined by Court precedents and that the announcement of a broad rule by the Kennedy plurality was inappropriate. *McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2791. Noting the limited facts in the case and the fact that no Court precedents had held that a single isolated sale was sufficient to assert jurisdiction, Justice Breyer agreed with the Kennedy plurality's conclusion that New Jersey did not have jurisdiction over McIntyre. *McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2791.

¶ 25      Justice Ginsburg, joined by Justices Sotomayor and Kagan, dissented, arguing that New Jersey had jurisdiction over McIntyre because McIntyre targeted the entire United States market by making arrangements with its American connections at trade shows and by hiring a United States distributor to market its products throughout the United States. *McIntyre*, 564 U.S. at ___, 131 S. Ct. at 2797 (Ginsburg, J., dissenting, joined by Sotomayor and Kagan, JJ.).

¶ 26      Addressing minimum contacts, Chrysler Canada argues that the evidence showed that Chrysler United States and Chrysler Canada are distinct legal entities and that Chrysler United States' purposeful contacts may not be imputed to Chrysler Canada to support a finding of specific jurisdiction. It urges that, beyond its mere awareness that some of the vehicles it assembles "may" be swept into Illinois through the stream of commerce, there are no purposeful contacts (and, therefore, no sufficient minimum contacts) by Chrysler Canada directed at Illinois. Specifically, Chrysler Canada contends that it does not engage in commercial activities or other purposeful contacts in Illinois. Further, it does not receive vehicle orders from United States customers or dealerships; does not sell (or have control over the distribution of) vehicles to United States customers or dealerships; and does not ship vehicles to United States customers or dealerships. Further, Chrysler Canada asserts that it does not design products for the Illinois market, advertise in Illinois, or market products through a distributor who has agreed to serve as its sales agent in Illinois. Chrysler Canada notes that the First District has mentioned in one case that the appellate court generally follows the narrow stream-of-commerce theory. See *Zazove v. Pelikan, Inc.*, 326 Ill. App. 3d 798, 805 (2001) (citing only two cases, one of which is an *exception* involving the introduction of "inherently dangerous or toxic products into the stream of commerce"). Chrysler Canada seizes upon this case and others to urge us to apply the narrow stream-of-commerce theory. However, as we detail below, we conclude that, under *either* theory, Chrysler Canada has sufficient minimum contacts with Illinois. Further, the propriety of either version of the theory aside, the case law upon which Chrysler Canada relies is either irrelevant or distinguishable. See *Zazove*, 326 Ill. App. 3d at 808 (without further addressing *Asahi*, reversing trial court's dismissal of complaint for lack of personal jurisdiction over Tennessee defendant where the defendant, an agent-distributor of pens manufactured by a German corporation, sold and shipped thousands of pens to Illinois annually and purposely marketed pens to Illinois residents by advertising in magazines of national and local circulation and by direct mail to Illinois residents); see also *Dickie v. Cannondale Corp.*, 388 Ill. App. 3d 903, 908 (2009) (affirming dismissal for lack of personal jurisdiction over Taiwanese company where the defendant manufactured clipless bicycle pedals for Cannondale, an American corporation that distributed bicycles throughout the United States; holding that the defendant did not have minimum contacts with Illinois, where, although it

was aware that Cannondale distributed its products throughout the United States, there was no evidence that it was *specifically* aware of where and how Cannondale's products were marketed or sold, as it sold its pedals to a Taiwanese trading company and had no control over or *knowledge* regarding the distribution of the pedals, never shipped pedals to the United States, and had no presence in Illinois); *Loos v. American Energy Savers, Inc.*, 168 Ill. App. 3d 558, 562 (1988) (cited by *Zazove* and affirming dismissal for lack of personal jurisdiction over foreign engineering firm where there were no allegations that the defendant was doing business in Illinois or that it knew that the subject generator would be sold in Illinois; noting that "a defendant's mere awareness that the stream of commerce *may* cause his product to enter the forum State does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum State" (emphasis added)); accord *Morris v. Halsey Enterprises Co.*, 379 Ill. App. 3d 574 (2008) (Taiwanese manufacturer produced allegedly defective ceiling fans for the United States market, including for an Illinois corporation; court held that the defendant did *not* have minimum contacts with Illinois sufficient to establish personal jurisdiction; although the defendant was aware that hundreds of thousands of its products were distributed and marketed *nationally* in the United States through a network of lighting stores and national retail chains and that between 70% and 85% of its sales were destined for the American market, it was *not* aware that the products it placed into the stream of commerce were being marketed in *Illinois* and it had no control over the specific distribution of its fans in the United States).

¶ 27    Several other cases are instructive. In *Worldtronics International, Inc. v. Ever Splendor Enterprise Co.*, 969 F. Supp. 1136 (N.D. Ill. 1997), Worldtronics, an Illinois corporation, sued Ever Splendor, a Taiwanese coffee maker manufacturer, alleging patent infringement. Ever Splendor moved to dismiss Worldtronics' complaint for lack of personal jurisdiction. The *Worldtronics* court denied Ever Splendor's motion. *Id.* at 1142. The evidence reflected that Ever Splendor sold its products to distributors who, in turn, imported those products to the United States. *Id.* at 1138. Ever Splendor was aware that its products were sold through K mart and Target, and it would occasionally ship products directly to K mart's warehouse. *Id.* Thus, the sales process occurred "through an established distribution channel, whose destination is known to Ever Splendor." *Id.*[4]

¶ 28    Chrysler Canada complains that *Worldtronics* is not helpful because it did not analyze Illinois stream-of-commerce law. We reject this claim. In *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432 (1961), the supreme court stated, "Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State." *Id.* at 442 (holding that a foreign corporation that manufactured in Ohio a safety valve that was incorporated in Pennsylvania into a water heater that was sold to an Illinois consumer, who was subsequently injured when the water heater exploded, was subject to

---

[4]Further, Ever Splendor was contractually obligated to indemnify a customer in a separate patent lawsuit then pending in Illinois. *Id.* at 1139.

personal jurisdiction in Illinois). The *Gray* court further noted, "To the extent that [a defendant's] business may be directly affected by transactions occurring here[,] it enjoys benefits from the laws of this State." *Id.* Given the foregoing language in *Gray,* we reject Chrysler Canada's claim that our supreme court would reject the established-distribution-channel rationale utilized by the *Worldtronics* court.

¶ 29    Here, we conclude that, under either version of the stream-of-commerce theory, the trial court correctly found that sufficient minimum contacts exist to exercise personal jurisdiction over Chrysler Canada. Chrysler Canada is not only aware that its products are distributed in Illinois (thus satisfying the narrow stream-of-commerce theory), but it has also purposefully directed its activities toward Illinois (broad stream-of-commerce theory). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 476 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)). Contacts with the forum state that are " 'random,' " " 'fortuitous,' " or " 'attenuated' " will not be sufficient to establish that exercise of that state's jurisdiction was foreseeable to the defendant. *Burger King*, 471 U.S. at 475 (quoting *Keeton*, 465 U.S. at 774). The United States market, including Illinois, is Chrysler Canada's primary market. Masse's deposition testimony and affidavit reflect that Chrysler Canada is aware that 82% of its production (albeit not all of which consists of Plymouth Voyager minivans) is distributed, through an established distribution channel, within the United States. During the relevant period, Chrysler Canada indirectly shipped products into the American market, including Illinois, through Chrysler United States, its parent corporation. We agree with plaintiff's assertion that Chrysler Canada continuously and intentionally serves or targets this market and is set up to manufacture vehicles for (and derives significant revenue from) the United States market, including Chrysler dealerships throughout Illinois. Chrysler Canada concedes that, during 2008 and 2009, Chrysler United States ordered 28,383 total vehicles of various makes and models, including minivans, for its independently owned dealerships in Illinois.

¶ 30    Further, to the extent that the broad stream-of-commerce theory is viable following *McIntyre*, we note that, unlike the *Dickie*, *Loos*, and *Morris* defendants, Chrysler Canada is specifically *aware* of the final *destination* of *every product* (*i.e.*, vehicle) that it assembles. In its answers to interrogatories, Chrysler Canada stated that it was aware of the number of vehicles it assembled that contained Illinois addresses on the "Ship To" fields of the vehicles' Monroney labels or shipping orders and that it "expected" that some of its vehicles would be sold in Illinois. Thus, Chrysler Canada had an expectation that its products would be purchased by Illinois consumers and, given the continuous nature of its assembly relationship with Chrysler United States, its contacts with Illinois were not random, fortuitous, or attenuated.

¶ 31    We finally note that Chrysler Canada's argument that it is a mere assembler and not a manufacturer is not well taken. An automobile assembler is a manufacturer. See, *e.g.*, *Appeal*

*of Titzel Engineering, Inc.*, 205 A.2d 700, 703 (Pa. Super. Ct. 1964) ("[M]aking an automobile would be manufacturing whether or not it was merely the assembling of parts manufactured by many other companies. Except for the simplest items, such as screws, cloth and glass, manufacturing today is largely the assembling of many manufactured parts from which are made [new articles]. Assembling is an indispensable part of the making of all complicated articles and is a part of the manufacturing process of all such articles."); see also *Connelly v. Uniroyal, Inc.*, 75 Ill. 2d 393, 410 (1979) (liability in tort for a defective product extends, in addition to the manufacturer, to the assembler of parts).

¶ 32    In summary, Chrysler Canada had sufficient minimum contacts such that it was fairly warned that it may be haled into an Illinois court.

### 2. Arises-Out-Of Requirement

¶ 34    Next, a plaintiff must show that the action arose out of or was related to the defendant's contacts with Illinois. *Morgan, Lewis*, 401 Ill. App. 3d at 954. This requirement is clearly met here. Plaintiff's injuries clearly arose out of and were directly related to her use of a vehicle assembled by Chrysler Canada; that is, the cause of action directly arose out of Chrysler Canada's contacts with Illinois. See *Keller v. Henderson*, 359 Ill. App. 3d 605, 615-17 (2005); see also *Burger King*, 471 U.S. at 473 (" '[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure forum customers" (quoting *World-Wide Volkswagen*, 444 U.S. at 297-98)).

### 3. Reasonableness

¶ 36    To comply with federal due process, a plaintiff must show the reasonableness of Illinois's exercise of personal jurisdiction over the defendant. *Asahi*, 480 U.S. at 113. To determine reasonableness, courts consider: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interest of the affected forums, including the forum state, in the most efficient resolution of the dispute; and (5) the interest of the affected forums in the advancement of substantive social policies. *Id.* " 'In general, [cases where it is unreasonable to assert jurisdiction over a defendant who has purposefully directed its activities at Illinois] are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.' " *Kalata v. Healy*, 312 Ill. App. 3d 761, 770 (2000) (quoting *CoolSavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1005 (N.D. Ill. 1999)).

¶ 37    Here, the reasonableness factors weigh in favor of finding personal jurisdiction in Illinois. First, Illinois has an interest in resolving a dispute concerning a vehicle accident and personal injuries that occurred in Illinois. Second, plaintiff has a strong interest in obtaining relief for her injuries that were allegedly caused by Chrysler Canada. Finally, Illinois has a strong interest in advancing the substantive social policy of compensating victims for torts occurring

in Illinois and of ensuring the safety of the vehicles on its roadways. See *Russell v. SNFA*, 408 Ill. App. 3d 827 (2011) (reasonableness factors weighed in favor of Illinois jurisdiction, where rotor bearings made by French company for a medical air service helicopter allegedly caused the helicopter to crash in Illinois, resulting in plaintiff's brother's death). Although we acknowledge that having to litigate in Illinois is a burden on Chrysler Canada as an alien defendant, the other factors nevertheless outweigh this factor, in favor of concluding that it is reasonable for Illinois to exercise personal jurisdiction over Chrysler Canada.

¶ 38                               B. Illinois Due Process

¶ 39    Personal jurisdiction over a defendant must also comply with the due process clause of the Illinois Constitution. *Bell*, 405 Ill. App. 3d at 234. Under the Illinois Constitution, personal jurisdiction may be exercised "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts [that] occur[red] in Illinois or [that] affect[ed] interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). Theoretically, the due process standards of the Illinois and federal constitutions might diverge in some cases. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 388 (2005). However, it has been noted that the case law generally holds that, "when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction." *Keller*, 359 Ill. App. 3d at 620.

¶ 40    Chrysler Canada argues that it is inherently unfair to subject it to the jurisdiction of an Illinois court based on the activities of a third party–Chrysler United States–where Chrysler Canada did not advertise, solicit, or otherwise serve any Illinois market and where it had no involvement with or control over the distribution of any vehicles it assembled, including the subject minivan, in the United States. It reasons that, because it had no direct conduct or connection with Illinois, it could not reasonably anticipate being sued in Illinois.

¶ 41    We reject its argument. Chrysler Canada does not assert that the Illinois due process analysis diverges from the federal due process analysis. Therefore, because federal due process concerns have been satisfied here (*i.e.*, minimum contacts and the arising-out-of and reasonableness requirements), so have Illinois due process concerns. See *id.* at 619-20 (noting that federal cases have stated that, because Illinois case law has not specified any difference between Illinois and federal due process considerations, the analyses are identical). In any event, under these facts, we conclude that it is fair, just, and reasonable to require Chrysler Canada to defend this action in Illinois, because the company purposefully availed itself of Illinois benefits and because suit in Illinois was foreseeable as to any injuries resulting from defects in the company's vehicles.

¶ 42    In sum, because specific personal jurisdiction over Chrysler Canada comports with both federal and Illinois due process, the trial court had personal jurisdiction over Chrysler Canada and did not err in denying Chrysler Canada's motion to dismiss.

¶ 43                               IV. CONCLUSION

¶ 44    For the foregoing reasons, the judgment of the circuit court of Winnebago County is

affirmed.

¶ 45        Affirmed.